O’NIELL, Chief Justice.
 

 This is a suit for disability insurance provided for in three life insurance policies. In fact there were six suits, which were consolidated and dealt with as one suit. The plaintiff claims that he was stricken with angina pectoris, causing frequent, violent and painful paroxysms, and total and permanent disability, and preventing him from performing any work for compensation or profit, or from following any gainful occupation. One of the policies is for $5,000 and the two others are for $10,000 each. All of them contain the stipulation for the payment of one per cent, per month in case of total and permanent disability. The insured first brought suit on each of the three policies for eight monthly installments, amounting to $2,-000, alleged to be past due, and after two months had elapsed he brought three more suits for two more installments, amounting to $500, alleged to be past due. He claimed also the penalty of double indemnity, and attorneys’ fees (amounting to $4,000 in the six suits), under the provisions of Act No. 310 of 1910. He prayed also for a return of the premiums, amounting to $868.40, paid under protest after his disability was said to have set in, and prayed that all subsequent premiums should be decree waived by the insurer, and not payable by the insured, according to the terms of the policies. The insurance company, answering the suit, denied that the insured was totally or permanently disabled, and denied that he was afflicted with angina pectoris. That was the ground on which the company had denied liability, after investigating the claim for nearly four months after the insured had furnished the proofs of disability, on forms furnished by the company. The district judge gave judgment against the company for all that the plaintiff sued for, except that the judge fixed the attorney’s fees at $3,500, instead of $4,000. The insurance company is appealing from the decision.
 

 The main'issue in the case is the question of fact — whether the insured was afflicted with angina pectoris, causing total and permanent disability, and wholly preventing him from performing any work for compensation or profit, or from following any gainful occupation. That is, substantially, the language of the disability clauses in the policies. It is virtually conceded by all of the doctors and specialists who testified in the ease that if the plaintiff’s ailment was angina pectoris he was totally and permanently disabled, within the terms of the policies. He suffered frequent painful and violent paroxysms, in which he appeared to be dying. These spells, which threatened the life of the insured, were superinduced by mental or physical exertion, as well as by excitement or fear. It was on the advice of four of the most noted specialists on diseases of the heart, in the city of New Orleans, as well as on the advice of the family physician in Alexandria, where the insured resided, that he was compelled to give up all work and retire from business. His business was that of a wholesale grocery and produce dealer, on a large scale — -the sales amounting, approximately, to $1,009,000 annually, and the business being profitable. For. that reason, one of the specialists in New Orleans, after his first examination of the insured, declined to
 
 *932
 
 take the responsibility of advising him to retire from business, without further investigation and time for development of the symptoms of the disease. But even that one of the specialists who testified in the ease admitted that they who had advised immediately that the insured should retire from business had advised him correctly. The diagnoses and observations which were made by the four specialists on heart.diseases, aided by one of the best known radiologists in New Orleans, were very thorough, extending over a period of nine months, and were confirmed by all known symptoms of angina pectoris, and by the most reliable tests, including the making of electrocardiographs, as requested by the insurance company’s medical director. On receipt of the proofs of disability, the medical director wrote that he would require further time . for investigation; and, some months later, he requested the insured to be examined by a doctor named in the request, and residing and practicing in Alexandria. The insured immediately complied with the request, and the examining physician reported to the company that the insured had not angina pectoris but had infected tonsils, filled with pus, causing the heart trouble; and that a removal of the tonsils would end the trouble. The physician expressed great respect for the opinions of the specialists who had pronounced the ailment angina pectoris, but adhered to his own diagnosis, and suggested an examination by a doctor'whom he named, residing and practicing in Alexandria, and specializing in diseases of the ear, nose and throat. The insured promptly submitted to the examination, and the report of the examiner was “throat acutely inflamed, with tonsils full of pus; * * * heart slightly enlarged with endocarditis; * * * no objective symptoms of angina pectoris.” “Endocarditis” means inflammation of the endocardium, which is the membrane lining the cavities of the heart.. Another physician in Alexandria, not a specialist, examined the insured at the request of the insurance company and pronounced the case septic endocarditis, caused by infected tonsils. But that doctor took the insured to another doctor in Alexandria, who also examined the insured, but reported that he found the tonsils and the area surrounding them normal, and that there was no pus or infection in or around the tonsils. The insured then consulted one of the best known throat specialists in New Orleans, and he, after a thorough examination, reported that there was. no pus or infection in or around the tonsils — no disease there — or cause for advising a removal of the tonsils. Several laymen who were often in the company of the insured testified also to the frequence and violence of the paroxysms, which the specialists said were sure
 
 symptoms
 
 of angina pectoris. The evidence leaves no doubt whatever that the insured was afflicted with angina pectoiis, causing total and permanent disability, at the time when he furnished the proofs thereof on the forms supplied by the insurance company.
 

 The appellant complains of a ruling of the district judge, refusing to compel the insured to take the witness stand for cross-examination, under the provisions of Act No. 126 of 1908. The statute allows either party to a lawsuit to subject his opponent to cross-examination. But the1 attorneys for the insured objected to the procedure- in this case on the ground that the-ordeal might bring
 
 *934
 
 on a paroxysm and be fatal to the insured. Before ruling on the objection, the judge appointed three physicians to examine the insured and give an expert opinion as to the danger of subjecting him to the ordeal of a cross-examination; and the three physicians, after mating the examination, reported unanimously that it would endanger the life of the insured to subject him to cross-examination. The judge therefore sustained the objection. We do not find that he erred in his ruling. There is no specific suggestion in the insurance company’s brief as to what advantage it would have been to the company to cross-examine the insured. I-Iis wife and associates testified to Ms sufferings; and there seems to be no dispute on that score.' It is pointed out in the insurance company’s brief that, in the proofs of disability, furnished hy the insured, he gave the names of four doctors, including specialists, who had treated him for angina pectoris, but omitted the name of a specialist in New Orleans, who also treated him professionally. But that specialist served principally as a diagnostician and as a consultant for the family1 physician. Hence there was no fraud or deception in the omission of his name in the proofs of disability. He is the one who' at first was reluctant to advise the insured to retire from business; but he testified in the case that the insured was afflicted with angina pectoris and was thereby toally and permanently disabled. There was no necessity for a cross-examination of the insured on that subject. Act 126 of 1908 is not so drastic, either in terms or implication,. as to compel a judge to subject a litigant to cross-examination if his physical condition is such that the ordeal would endanger his life — especially when it does not appear that a cross-examination is essential to a disclosure of the whole truth. The trial judge may — and ought to — use his discretion in that respect.
 

 As to the judgment for double indemnity and attorneys’ fees, the act of 1910 forbids life, health or accident insurance companies to stipulate in policies, insuring against loss by sickness or accident, for deferring payment beyond “thirty days from written notice, and proof to the company by the attending physician, in the form required by the terms of such policy or contract of insurance.” (Section 1.) The statute provides that such payments shall not be delayed beyond the period of thirty days “without just and reasonable grounds such as to put a reasonable and prudent business man on his guard.” (Section 2.) And the statute provides :
 

 “That the insurance company guilty of such delay in payment, unless upon just and reasonable grounds, shall pay to the assured, as a penalty, double the amount due under the terms of the policy or contract, during the period of delay, with attorney’s fees to be determined by the tribunal before whom suit is instituted.” (Section 3.)
 

 The question, therefore, is whether the district judge’s finding, that the delay in payment in this case was “without just and reasonable grounds, such as to put a reasonable and prudent business man on his guard,” is sustained by the evidence. The decisions cited on that question, by either the appellant or the appellee, are of no value as precedents, because the circumstances are not the same in any two cases, and were not the same in any ■ ease cited as they are in this case. The proof
 
 *936
 
 of disability was sent to the company on the 12th of March, 1932, on a form furnished by the company, and signed by the attending physician and by two specialists in diseases of the heart, who also had attended the insured in his illness. Receipt of the proof was acknowledged by the company on the 23d of March; and on the 14th of April, the company wrote that, after full consideration of the claim, with the proof in support of same, the company had concluded that there was some question as to the permanency of the condition of the insured, and that it would be necessary for more time to elapse before the company would be 1 able to pass upon the claim. On the 3d of June, and again on the 24th of June, 1932, the insured wrote to the company that sufficient time had elapsed, and demanded payment. On the 25th of June, 1932, the company sent another blank form for proof of disability, to be signed by the insured and the attending physician and returned to the company. Two days later this second proof of disability was sent to the company; and, on the 11th of July, 1932— which was long after the lapse of the thirty ■days allowed by the statute — -the company requested the insured to be examined by another physician named by the company. It was upon his report that the company denied liability — on the 29th of June, 1932. Meanwhile — as appears from the testimony of the company’s medical director — the company had become suspicious about the honesty or justness of the claim, because of the financial depression, and because the insured had disability policies with other companies, amounting to $650 per month. It appears, however, that evidence of the good character and reputation and financial standing of the insured was available to the company — as was also the evidence of the justness of his claim upon the other insurance companies. It is not necessary to go into details on this subject. It is sufficient to say that there is no good reason to take issue with the district judge on his finding that the company’s withholding payment in this case was without just or reasonable grounds. The purpose of a statute that penalizes an insurance company for withholding, without reasonable cause, payment of a just claim for loss resulting from sickness or accident is to impose a greater obligation upon the insurer, to pay such claims promptly, than the obligation of an ordinary debtor; and the reason for that is found in the dire necessity on the part of the sick or injured person — in many instances — to recover his loss at once. Life & Casualty Insurance Co. of Tennessee v. Ossie McCray, 291 U. S. 566, 54 S. Ct. 482, 78 L. Ed. 9S7.
 

 The attorneys’ fees allowed by the district judge seem large in comparison with the amount sued for; but that is not all that was involved, because the effect of the judgment was to fix the company’s liability for future payments and for the $25,000 of life insurance. The value of the legal services rendered is proven by the testimony of two reputable attorneys at law, and by the extent of the work done and time expended. The suits were transferred to the federal court, at the instance of the insurance company, and back to the district court, at the instance of the insured; and the taking of testimony, in New Orleans, as well as in Alexandria, lasted many weeks, and built up a record of 749
 
 *938
 
 pages- of typewriting. Considering all of these facts, no good reason conld he given for a reduction of the fees allowed.
 

 The judgment is affirmed.