HIGGINS, Justice.
 

 The insured instituted an action against his insurer to recover a premium paid under protest and three' disability payments of $250 each, alleged to be due him, under
 
 *856
 
 the provisions of an insurance policy, on June 15, July 15 and August 15, 1939, with legal interest thereon, and also prayed for penalties of double indemnity, and attorney’s fees, under Act 310 of 1910. The defendant admitted the issuance of the policy and averred that it had paid the plaintiff the sum of $250 per month disability from September 15, 1931, until June 15, 1939, and stopped further payments because the plaintiff was never at any time permanently and totally disabled. There was judgment in favor of the plaintiff as prayed for and the attorney’s fee was fixed at $500. The defendant appealed.
 

 Counsel for the defendant, during the trial on the merits, objected to the plantiff offering any evidence tending to show that he was disabled within the meaning of the policy because he had refused, through his counsel, to submit to a medical examination as requested by the insurer.
 

 The testimony on the question of whether or not the plaintiff refused to submit to the examination was given by one of the attorneys representing the defendant and the attorney for the plaintiff. These witnesses, both reputable attorneys, contradicted each other, the former stating that the plaintiff’s attorney refused to submit his client to further medical examination because the company, under its policy, was only entitled to one examination a year and this had been previously made on May 12, 1939. The version of the latter is that the company’s attorney insisted that the plaintiff go from his home in Ruston to the City of Shreveport, a distance of 77 miles, and remain there, in a hospital, for a few days, where scientific tests could be made to determine his true condition, and that he advised his client not to do so, unless ordered by the Court, but that he stated his client would be available for medical and physical examinations at any time, in the local sanitarium at Ruston, in which town he lived.
 

 The trial judge overruled the objection to the plaintiff’s medical witnesses’ testimony and permitted the doctors to testify that the plaintiff was totally and presumably permanently disabled.
 

 Counsel for the defendants contend that the trial court erred in admitting this testimony and that it should have been excluded and the plaintiff denied disability benefits, because he had refused to submit to a medical examination by qualified doctors, citing Kennedy v. New Orleans Railway & Light Co., 142 La. 879, 77 So. 777; Bailey v. Fisher, 11 La.App. 187, 123 So. 166; and Daste v. First National Life, Health & Accident Insurance Co., 14 La. App. 565, 130 So. 572.
 

 The plaintiff testified that, while he objected to making the trip to Shreveport and being confined to a hospital for the purpose of having an examination made there, he never refused to permit the defendant’s doctors to examine him at his home or in the Ruston-Lincoln Sanitarium, and that he was instructed by his attorney only to go to Shreveport in case he was ordered to do so by the court. His testimony in this respect is corroborated by the letter of Dr. A. A. Herold of Shreveport (who examined
 
 *858
 
 the plaintiff for the Insurance Company on May 12, 1939, at the Ruston-Lincoln Sanitarium), in which he states that the plaintiff did not “absolutely refuse to come in for an examination,” but evaded the issue and submitted to the medical examination at the Sanitarium on the morning of May 12, 1939. Furthermore, defendant’s counsel, in his testimony on cross-examination, admits that he intended to file a rule against the plaintiff to show cause why he should not be ordered to submit to an examination in the Shreveport Hospital, but changed his mind about the matter when he concluded that probably the district judge would act unfavorably thereupon. Neither by rule nor verbal request did the defendant ask the trial judge to have any further examination made of the plaintiff.
 

 Defendant’s attorneys, in their argument here, state that only a superficial examination could be made of plaintiff’s condition at Ruston, whereas, due to better scientific equipment, a thorough examination could be given him in the Shreveport Hospital. It appears from Dr. Herold’s letter that he had a metabolism made in the Ruston Institution under very favorable circumstances and that this test was one of the means of determining the plaintiff’s condition. Counsel has not pointed out any provision in the policy, or any law requiring the plaintiff to go from his home to Shreveport to be examined. Nothing was said by the plaintiff which would indicate that he refused to grant more than one opportunity for a test or that he confined the examination to one doctor of the defendant.
 

 The defendant also points to the fact that in similar litigation by the plaintiff to recover disability payments from another insurance company, pending in the Federal Court, the judge ordered the plaintiff to submit to a medical examination at Monroe, La., and that he failed to do so, thereby tending to show that the plaintiff declined to permit the defendant’s doctor to examine him. Plaintiff’s attorney testified that he had filed aq exception to the jurisdiction of the Federal Court in which the defendant sought a declaratory judgment, and that he advised his client not to comply with the ex parte order of the court until forced to do so, because by voluntarily appearing he might thereby waive the jurisdictional plea which was still under submission. While the testimony of the defendant’s counsel on this score is pertinent, it is by no means conclusive and is not sufficient to overcome the proof that the plaintiff was willing to be examined by the defendant’s doctors in the RustonLincoln Sanitarium.
 

 In view of the fact that it appears that the plaintiff did not refuse to submit to medical examinations and tests and that the defendant at no time, either by motion in open court or rule, asked the district judge for an opportunity for additional tests and examinations of the plaintiff, the authorities cited by the defendant are not applicable and the trial court properly overruled the objection to the medical testimony offered by the plaintiff.
 

 With reference to the question of liability of the defendant, the trial judge has
 
 *860
 
 favored us with a written opinion which correctly sets forth the facts and the law and we, therefore, quote it with approval:
 

 “On April 6, 1927, defendant issued to plaintiff its life insurance policy No. 9815205, in the amount of $25,000.00.
 

 “By the terms of said policy defendant obligated itself to pay to plaintiff, the insured in the policy, the sum of $250.00 per month during the total and presumably permanent disability of .plaintiff, as defined in said policy, and to waive the premium payments during such disability.
 

 “On or about September 15, 1931, plaintiff became totally and presumably permanently disabled. From that date to June 15, 1939, defendant made regularly monthly payments and waived the premium payments on said policy according to the terms of said policy.
 

 “On June 15, 1939, defendant -wrote plaintiff with reference to his claim under the mentioned policy, as follows:
 

 “ ‘Referring to the above numbered policy on your life on which policy monthly disability income payments have been made to May. 15, 1939, inclusive, it appears to the Company from information recently received that you are no longer continuously totally disabled within the meaning of the Disability Benefit Provision contained in the policy.
 

 “ ‘In view of this condition, we regret we find it necessary to say that no further monthly disability income payments will be made and including policy #10 785 013 the' premiums due on and after June 15, 1939, become payable in conformity with the terms of the policy contracts/
 

 “Thereafter defendant made no further monthly payments-.
 

 “Plaintiff alleges that he has been totally and presumably permanently disabled, within the definition of said policy, from September 15, 1931, to date, and is now totally and presumably permanently disabled.
 

 “He seeks judgment for the full amount of the disability payments provided for in the policy, beginning with June 15, 1939, and for double the amount thereof and for attorney’s fees, as provided in Act 310 of 1910.
 

 * * *
 

 “Five capable physicians testified in the case; four, namely, Dr. S. L. White, Dr. Marvin T. Green, Dr. J. B. Harris, and Dr. D. S. Calhoun, testified in behalf of plaintiff, and one; namely Dr. A. A. Herold, testified in behalf of the defendant.
 

 “The four physicians who testified in plaintiff’s behalf testified that, in their opinion, plaintiff is totally and permanently disabled.
 

 “Dr. Herold examined plaintiff in 1934 for defendant and then again on May 12, 1939.
 

 “On direct examination Dr. Herold was asked this question:
 

 “ ‘Q. Doctor, from your examination and your prior acquaintance with this plaintiff’s condition, did you conclude whether or not he was totally and permanently disabled?’
 

 
 *862
 
 “ ‘A. Well, I found his condition at the time of this examination so much better than on the previous examination, that I considered that while he still has a disability, which will probably be more or less permanent, because there’s been no attempt to remove the underlying cause, that I didn’t consider it total at that time of my examination.’
 

 “All the physicians agree that plaintiff is afflicted with what is known as thyrotoxicosis, and the weight of their testimony is that it is an ailment that grows progressively worse and one from which a person will never recover without an operation.
 

 “Dr. Herold, in his report of his examination to defendant company, said:
 

 “ Tf you were to put the question squarely up to me, I admit that it would be difficult to answer, but, frankly, while I do not consider Mr. Harris a well man (but believe that he could be made well by surgery), still, I feel that I could not conscientiously certify that at this time he is totally disabled from performing all duties by which he might-earn a livelihood.’
 

 “The fact is he did not certify that he was or was- not totally disabled. He made the examination and his report of his findings and left it to defendant to make its own decision. And defendant, thereafter, on June 15, 1939, wrote plaintiff that it had made its decision, saying ‘it appears to the Company from information recently received that you are no longer continuously totally disabled within the meaning of the Disability Benefit Provision contained’ in the policy.’
 

 “It is presumed that the ‘information recently received’ was Dr. Herold’s report of his examination made on May 12th.
 

 “In the case of Crowe v. Equitable Life Assur. Soc., 179 La. 444, 154 So. 52, (page 54), the Supreme Court of Louisiana, said:
 

 “ ‘ * * * we think that the true rule governing cases of this kind is stated in 7 Couch on Insurance, § 1670, p. 5769, as follows, viz.:
 

 “ * * It may be said, .generally speaking the provisions in life, health and accident insurance policies for indemnity in case the insured becomes totally, permanently or wholly disabled, etc., do not require that he shall be rendered absolutely helpless, but, rather, merely requires such disability as renders him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. At least such a rule has been in substance adhered to, where the policies required that he be totally disabled from transacting any and every kind of business. * * * ”
 

 “ ‘The rule is stated in 14 R.C.L., § 491, p. 1315, as follows, viz.:
 

 “‘“The rule prevailing in most jurisdictions is that the total disability contemplated by an accident insurance policy does not mean, <is its literal construction would require, a state of absolute helplessness which can result only from loss of reason, since as long as one is in full possession of his mental faculties he is capable of transacting some part of his business, whatever it may be, although he is incapable of.
 
 *864
 
 physical action. On the contrary, these courts, giving consideration to the object of the contract, hold that the ‘total disability’ contemplated by the agreement is inability to do substantially all the material acts necessary to the prosecution of the insured’s business or occupation in substantially his customary and usual manner.” ’
 

 “We find holdings to the same effect in the later cases of Cates v. New York Life Insurance Co., La.App., 159 So. 172; Smith v. Mutual Life Insurance Co. of New York, La.App., 165 So. 498.
 

 “The foregoing authorities are cited because of the testimony of Dr. A. A. Herold. It was upon the report of his findings from an examination of plaintiff that defendant reached its decision that plaintiff is not longer entitled to the disability payments provided for in the policy.
 

 “Dr. Herold testified as follows: ‘A. I don’t think he could do a heavy day’s work; don’t see why he couldn’t do an ordinary amount of office work, without any strain on his nervous system.’
 

 “Again: ‘A. If he had the proper help, he could attend to some of it.’
 

 “It appears that plaintiff was engaged in a rather large and successful cotton brokerage business, before his disability set up and that its proper and successful operation depended very largely upon him. It is perfectly obvious that, being in the physical condition which Dr. Herold describes, plaintiff could not carry on his former or a similar business in substantially his customary and usual manner.
 

 “The overwhelming weight of the medical testimony in this case, including that of Dr. Herold, is on plaintiff’s side of the case. It conclusively establishes the fact that plaintiff was, on June 15, 1939, and still is, totally disabled within the meaning of the disability benefit provision contained in the policy, and that defendant Company did not have just and reasonable grounds for discontinuing the monthly disability income payment.
 

 “Plaintiff also seeks to invoke against defendant the double indemnity provisions of Act 310 of 1910.
 

 “On or about September 15, 1931, defendant recognized and approved plaintiff’s claim for total disability payments under the provisions of the policy and began making payments as of that date. It continued making said payments until June 15, 1939, when it abruptly discontinued them. Under the evidence of this case and the law applicable thereto defendant acted arbitrarily and without just and reasonable grounds. The report of its own physician, upon which it evidently based its decision, did not justify such action, especially in view of the fact that defendant had been paying this claim for almost eight years, and while plaintiff, to its knowledge, was and is afflicted with an ailment which the medical profession expects, according to the testimony, to grow progressively worse unless its cause is removed by an operation.
 

 “The case of Smith v. Mutual Life Insurance Company of New York, La.App., 165 So. 498, is very much in point on the main issues of the case at bar. (See also, Fried v. State Life Insurance Co., of In
 
 *866
 
 dianapolis, Ind., 180 La. 927, 158 So. 20; Gold v. Mutual Ben. Health & Accident Ass’n, 186 La. 905, 173 So. 525) Brackets ours.
 

 “Plaintiff is entitled to 'judgment as prayed for, with this exception: the at-
 

 torney’s fee should be fixed at $500.00 instead of the amount prayed for.”
 

 For the reasons assigned, the judgment appealed from is affirmed.