PONDER, Justice.
 

 The defendant has appealed from the judgment of the lower court awarding the plaintiff disability insurance, statutory penalties for delayed payment, and attorneys’ fees.
 

 The insurance policy involved in this case was issued to the plaintiff June 2, 1924, in the amount of $20,000, payable in twenty annual installments and contained provision for the payment of $300 per month should the insured become totally disabled. The judgment of the lower court awards the plaintiff $6,600, representing disability payments and penalties up to and including March 1, 1946; legal interest on $3,300 from date of judicial
 
 *413
 
 demand; legal interest on $3,300 from date of judgment; $1,750 as attorney’s fees with interest from date of judgment; and costs.
 

 The pertinent provisions of the contract are as follows:
 

 “Permanent Total Disability — Should the insured become permanently totally disabled, the company will waive the payment of future premiums and pay to the insured a monthly income of three hundred dollars, all subject to the conditions set out on the succeeding pages of this policy ^ ^ 'fc
 

 “Should the insured, before the anniversary of this policy nearest the date on which he shall attain the age of sixty years and while this policy is in full force and no premium thereon in default, become permanently totally disabled, as hereinafter defined, the company, subject to the conditions hereinafter set forth, will waive the payment of all future premiums required under the conditions of the policy as they become due and pay the insured a monthly income of $300.00, such waiver to be effective and the first of such monthly income payments to become due and the period of disability to commence as of the date of the receipt at the home office of the company of due written proof of such disability and a subsequent payment to be made on the first day of each month thereafter during the continuation of such disability. Such waiver of premiums and income payments shall not affect any other benefits or values provided under the policy.
 

 “Permanent Total Disability, as used herein is defined to mean:
 

 “(1) Disability caused by accident, bodily injury or disease which totally and permanently prevents the insured from performing any work or engaging in any occupation or profession for wages, compensation or profit; or
 

 “(2) Disability caused by accidental bodily injury or disease which totally prevents the insured from performing any work or engaging in any occupation or profession for wages, compensation or profit and which shall have totally and continuously so prevented the insured for not less than ninety days immediately preceding the date of receipt of due written proof thereof; or
 

 “(3) The irrecoverable loss of the entire sight of both eyes, or the arfiputation at or above the wrist or ankle of both hánds or both feet or a hand and foot, if such loss or amputation is caused by accidental bodily injury or disease.”
 

 It is alleged in the plaintiff’s petition that he became totally disabled on or before May 1, 1945 and has made demands upon the defendant for the disability benefits under the policy without avail. The defendant admits in its answer the issuance of the policy, that it is in full force and effect, that amicable demands for payment have been made under the total disability provision and avers that it has re
 
 *414
 
 fused to pay the benefits for the reason that the plaintiff is not totally disabled; The present suit was instituted on March 19, 1946. The record does not disclose that the defendant made any effort to ascertain the truth of the plaintiff’s condition or towards the adjustment of the claim during the period beginning May 1, 1945 and ending March 19, 1946, from the date the claim was first asserted to the date the suit was filed.
 

 It appears from the evidence that the plaintiff was for many years engaged in the operation of a general mercantile establishment in Jonesboro, Louisiana doing a general furnishing business to farmers and others, usually on a credit basis from season to season. During the time he carried on this business, he was more or less engaged in the cotton business, buying and selling cotton. He was successful in his business enterprises and acquired considerable property. His mercantile establishment was destroyed by fire in the latter part of 1941 and he has engaged in no other business or occupation since that date. He is receiving approximately $300 per month income from his property, which was acquired prior to the loss of his business establishment.
 

 The plaintiff states that he began to notice that his hearing was defective in the year, 1940 and that on account of his defective hearing he did not reenter the mercantile business after the loss of his establishment in 1941 because he desired to wait awhile to ascertain if his hearing would improve. According to his testimony his hearing progressively became worse and prevented him from again entering into the mercantile and cotton business. He stated that he was treated by specialists in 1944 and lost his hearing in 1945, at which time he made a claim to the defendant for the disability insurance. The medical, as well as the lay, testimony shows that the plaintiff cannot carry on a conversation without the aid of a microphone or hearing aid. The medical testimony, as well as the lay testimony, shows that the plaintiff is. almost, if not totally, deaf. From the medical testimony and a number of merchants who testified in the case, it is impossible for the plaintiff to carry on the business of merchant and cotton buyer in his present condition. The witnesses state many reasons why it would be impossible for the plaintiff to carry on the business he had been engaged in without the ability to hear. It is not necessary for the purpose of this decision to recite those various reasons for the reason the defendant has produced no evidence to contradict it. The defendant’s testimony consists of two physicians who admit that the plaintiff is deaf for all practical purposes without the use of artificial aid.
 

 Dr. Ralph Riggs, a specialist in the diseases of the ear, practicing in Shreveport, examined the plaintiff at the request of the defendant on May 19, 1946, after suit had been instituted and before the answer was filed. On the trial of the case, this
 
 *415
 
 witness was placed on the stand by plaintiff. His testimony is to the effect that the plaintiff suffers a loss of hearing of 97.3% in the right ear and 100% in the left ear. He stated that the plaintiff would not be able to hear anything without the use of artificial aids. Dr. Dorf Bean, another ■ear specialist located at Shreveport, testified that he examined the plaintiff on two •occasions, April 24, 1945 and June 17, 1946. He stated that his first examination disclosed that the plaintiff’s hearing is 48% defective in the right ear and 47.3% in the left ear and his second examination revealed that his condition had become worse and at that time the plaintiff suffered a loss of hearing of 67% in the right ear and 80% in the left ear. Mr. W. E. Bradford, manager of the Audiphone Company, who made electrical tests of the plaintiff for Dr., Bean and furnished the hearing aid used by the plaintiff, corroborates Dr. Bean’s testimony. This witness stated that 80% in hearing is total deafness and that the hearing aid would not help the plaintiff in the left ear. Dr. C. L. LaRue, another specialist, testified that the plaintiff suffered a loss of hearing of 57% in the right ear and 70% in the left ear. He also testified that 80% loss in hearing is a total loss, or amounts to total deafness. These witnesses used the latest scientific devices to determine the extent of the plaintiff’s disability.
 

 The two physicians placed on the stand by the defendant did not use these modem devices. One of these witnesses fixed the plaintiff’s deficiency of hearing at 48% in the right ear and 47.3% in the left ear. The other one testified the impairment in plaintiff’s hearing was from 60 to 70% approximately, the right ear somewhat better than the left. Each of these witnesses only examined the plaintiff on one occasion. One of these witnesses used a tuning fork in his examination and the other used no instrument whatsoever. Neither of these witnesses used an audiphone or other scientific device.
 

 We had occasion to examine an insurance policy containing similar total disability provisions in the case of Patterson v. Metropolitan Life Ins. Co., 194 La. .106, 193 So. 478, wherein an oil field worker, thirty-three years of age, suffering from a loss of hearing of 80% in one ear and 70% in the other, was adjudged by the trial court totally disabled and awarded the total disability benefits provided for in the policy. We affirmed the judgment. In reviewing a number of authorities, we rejected the narrow rule followed in some of the cases and accepted the more liberal rule prevailing in this state and in the majority of the states of this- country. We pointed out therein that this Court has often declared that the words “total disability”, within the meaning of a policy similar to the one involved in the Patterson case, which is similar to the one involved in the present case, do not mean absolute helplessness, but rather the inability to do practically or substantially all the material
 
 *416
 
 acts required in the transaction of the insured’s regular occupation or business in the usual and customary manner.
 

 Under the provisions of Act No. 310 of 1910, the defendant is subject to the penalty of paying to the insured double the amount due under the policy during the period of delay with attorney’s fees, unless the refusal to pay is shown to be based on reasonable grounds. This statute provides that payments under life, health and accident policies shall not be delayed beyond the period of thirty days without just and reasonable grounds such as to put a reasonable and prudent business man on his guard.
 

 The trial judge imposed the statutory penalties on the ground, as reflected by the reasons he gave for his judgment, that the defendant made no showing whatsoever that any effort was made by it to ascertain the truthfulness of the plaintiff’s claim from the time the claim was first made until the suit was filed, and for the further reason that the defendant continued to oppose the plaintiff’s claim after having received the information of the plaintiff’s condition from Dr. Riggs, who had examined the plaintiff at the defendant’s request. The holding in the Patterson case is an additional reason why the penalties should be imposed in this case because the serious impairment of hearing in that case was held to be a total disability. The present case presents a more serious impairment in hearing and a greater disability to conduct the business or occupation engaged in by the insured. A mere reading of the reasons given in the Patterson case is sufficient to convince anyone that such a disability as presented in the present case is a total disability.
 

 The defendant contends that attorney’s fees fixed at $1,750 is excessive and should be reduced to the amount of $1,000. It cites several cases to support his contention, the most recent being Campasi v. Mutual Ben. Health & Acc. Ass’n, 207 La. 758, 22 So.2d 55. In that case the total benefits due under the policy was $1,900 and the total amount of the judgment was $4,550, which included attorney’s fees in the amount of $750. In the present case the total benefits due under the policy was $3,300 and the total judgment is $8,-350, which includes attorney’s fees in the amount of $1,750. The plaintiff relies on the holding in the case of Fried v. State Life Ins. Co. of Indianapolis, Ind., 180 La. 927, 158 So. 20, wherein $3,500 was allowed as attorney’s fees in recovering a judgment for $5,868.40 for disability insurance was held to be not excessive. In the Fried case the attorney had more work to do than the attorney did in this case. The extent of services of attorneys in cases is so variable that it is impossible to fix a set rule. Consideration must be taken to the amount involved and the amount of services rendered. As stated in the Fried case that while the attorney’s fees allowed by the district judge may
 
 *417
 
 seem large in comparison with the amount sued for, yet that is not all that is involved. In this case the company’s liability for future benefits under a $20,000 policy are fixed. In the Fried case the future liability of the company was fixed under a policy calling for $25,000. In view of the holdings in the aforementioned cases and the services rendered by the attorney herein, we are unable to give a good reason why the fees should be reduced.
 

 For the reasons assigned, the judgment is affirmed at appellant’s cost.
 

 BOND, J., absent.
 

 HAMITER, J., dissents from that part of the decree which awards statutory penalties and attorney’s fees; otherwise he concurs.