186 So.2d 861 (1966)
Harold RAMBIN, Plaintiff-Appellee,
v.
CONTINENTAL CASUALTY COMPANY, Defendant-Appellant.
No. 10570.
Court of Appeal of Louisiana, Second Circuit.
April 25, 1966.
Rehearing Denied May 30, 1966.
Writ Refused June 30, 1966.
*863 Browne & Lafargue, Shreveport, John F. Simon, Alexandria, for appellant.
Hal V. Lyons, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action upon an accident insurance policy wherein plaintiff, as the insured, seeks to recover of the defendant, Continental Casualty Company, the insurer, the sum of $400.00 per month for total and permanent disability during the period of his alleged disability, or, in the alternative, for a period of 24 months, or the sum of $200.00 per month for partial disability during the term thereof not to exceed six months, and for penalties and attorney's fees.
From a judgment awarding plaintiff compensation at the rate of $400.00 per month for the period of his disability, but rejecting his demands for penalties and attorney's fees, defendant prosecutes this appeal. By answer to the appeal, plaintiff prays for the allowance of the penalties and attorney's fees.
The issues presented on this appeal relate (1) to the avoidance of the policy by the alleged material misrepresentations made by plaintiff in his application for insurance, and (2) to the nature and extent of plaintiff's disability. In this connection, the defendant assigns as error of the trial court (1) the failure to conclude that plaintiff is precluded from recovery because of the alleged material misrepresentation made by him in his application for this insurance, (2) the failure to give effect to all the provisions of the contract, and (3) the finding that plaintiff's disability was such as to prevent him from performing all of the substantial duties of his occupation, as well as (4) the award to plaintiff of benefits for total disability, and (5) the failure to limit plaintiff's recovery for total disability to a period not to exceed 24 months, and for partial disability for a period not exceeding six months.
With reference to the question presented as to the avoidance of the policy, the defense is based upon the provisions of LSA-R.S. 22:619, subd. B, as follows:
"In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."
The misrepresentation with which plaintiff is charged was in answer to the question contained in the application:
"7. What portion of your average monthly earnings does the disability indemnity *864 under all policies you have or are applying for represent? ( ) Less than 50% (X) 50% to 75% ( ) More than 75%."
In giving consideration to the question thus presented, it appears appropriate to point out that plaintiff is the owner of a small country grocery which he operates largely with his own labor. His income fluctuates from time to time and is dependent upon the amount of business that he does. The record shows that during the year 1963, the year in which the insurance contract was entered into, plaintiff's gross receipts or earnings were $122,876.41; that the cost of the merchandise sold was $100,107.36, and that, accordingly, his gross earnings were $22,769.05. There is no showing of any actual intent on the part of the plaintiff to make a false statement in order to obtain the insurance. Nor do we find that the answer given materially affected either the acceptance of the risk or the hazard assumed by the insurer.
Where an insurer asserts a special defense in an action on a health and accident policy that the insurer was falsely induced to write the policy because of the insured's misrepresentations in an application, the burden is upon the insurer to establish wrongful intent upon the part of the insured and the falsity and materiality of the answer to the questions propounded in the application to procure such insurance, since fraud under our law is never presumed. Valesi v. Mutual Life Ins. Co., 151 La. 405, 91 So. 818 (1922); Thweatt v. National Life and Accident Ins. Co., 46 So. 2d 637, La.App., 2d Cir. 1950; Mataya v. Delta Life Ins. Co., 71 So.2d 139, La.App., Orleans 1954; Paz v. Implement Dealers Mutual Insurance Company, 89 So.2d 514, La.App., Orleans 1956.
From plaintiff's earnings, as hereinabove set forth, the conclusion is inescapable that defendant has not sustained its burden of establishing facts upon which the insurance may be avoided.
Moreover, we may point out that the phrase in the question propounded, "average monthly earnings," is ambiguous in that no period of time over which average monthly earnings may be computed is designated, and in that the earnings are designated neither "gross" nor "net." In a commercial or financial sense, the word "earnings" denotes the income derived from the carrying on of a business and is not necessarily restricted to cash or any other form of property, whether acquired by labor, skill, or talent, by mental effort or by well-directed efforts in some branch of industry. "Gross earnings" are the receipt of a business before deducting expenses; the term "net earnings" is generally defined as the sum received in excess of operating expenses and may mean "net income" or "net profits." The word "earnings," in its general acceptation when used in contracts, does not necessarily mean "net earnings" unless qualified in some manner.
In the question propounded, as aforesaid, in plaintiff's application for this insurance, the "earnings" referred to are not designated as either "gross" or "net." If the word "earnings" in the question refers to gross earnings, then, from a factual standpoint, there is no basis for defendant's contention that plaintiff's answer was false, as his gross earnings for the year in which the insurance was applied for and issued greatly exceeded the amount which even defendant contends would be necessary to warrant the acceptance of plaintiff's answer as truthful.
The rules are too well stated in the jurisprudence to require citation of authority that contracts of insurance will be construed strictly against the insurer and liberally in favor of the insured, and, therefore, that ambiguous provisions are to be construed most strongly against the insurer and in favor of the insured. Accordingly, where an ambiguity exists in the terms of an insurance contract, an interpretation will be adopted that is most favorable to the insured, and, where its terms admit of two interpretations, that one sustaining *865 the claim for indemnity will be adopted. For these reasons, we find no basis for the avoidance of plaintiff's insurance.
With reference to the nature and extent of plaintiff's disability, the evidence discloses that on June 7, 1964, while horseback riding, the horse on which plaintiff was riding slipped and fell, and threw plaintiff off in such manner that his right arm was broken in the elbow and wrist. He was hospitalized under the attention of Dr. Harold Bicknell, an orthopedic surgeon, who found plaintiff had sustained a comminuted fracture of the right radial head of the proximal ulnar, and of the right carpal navicular.
Surgery was resorted to in order to repair the damages. The fragments resulting from the fractures were removed, after which plaintiff was placed in a long-armed cast of plaster of Paris, which he wore until September 3, 1964. He was, however, discharged from the hospital June 13, 1964.
On the date of trial, Dr. Bicknell testified that plaintiff had a loss of 165 degrees of the normal movement of his elbow. He testified, however, that through another operation the range of motion in plaintiff's elbow might possibly be increased to 50 percent of normal, but even with such improvement he could not lift or handle merchandise of any considerable weightthat, at the time, he could not lift 10 pounds or even tie his shoes without difficulty.
Dr. James Oliver Manning, an orthopedist, examined plaintiff on behalf of the defendant and, in testifying, generally agreed with the testimony given by Dr. Bicknell. With reference to the ability of the insured to perform the substantial duties of his occupation in the usual and customary manner, Dr. Manning testified that he could use his injured hand and arm only as a helper to his left hand. In this connection, it may be pointed out that plaintiff was right-handed. Dr. Manning said the normal flexion of the elbow was 20-30 degrees and that plaintiff had sustained a loss of 10 degrees; the normal on extension of 90 degrees was said to be a total loss; and, from a normal of 75-80 degrees supination and pronation of the wrist, plaintiff sustained a loss of 65 degrees in the former and 45-50 degrees in the latter. There was also a loss of 60 degrees in the dorsiflexion of the wrist, and a similar loss to the volar flexion. Thus, from the record, it is convincing that plaintiff, at the time of trial, was not able to do any lifting of consequence, or even to do much writing.
From the fact of plaintiff's presence in his store, it was contended that he could confer with customers, give instructions to his employees, and give orders to salesmen, and, therefore, that he was able to perform some of the duties of his employment, from which it could only be concluded that plaintiff was not totally disabled.
The pertinent provisions of the policy are as follows:
"A. TOTAL DISABILITY. When, as the result of injury and commencing within 30 days after the date of the accident, the Insured is totally disabled and continuously prevented from performing each and every occupation or employment for wage or profit for which the Insured is reasonably qualified by reason of education, training or experience, the Company will pay for each month of such disability the Monthly Accident Indemnity stated in the Schedule for a period not to exceed the Maximum Period Accident Indemnity stated in the Schedule as the result of any one accident; provided further, that for a period not to exceed the first 24 months of such disability or the Maximum Period Accident Indemnity stated in the Schedule, whichever is lesser, the Company will pay Monthly Accident Indemnity for each month that the Insured is totally disabled and continuously prevented from performing each and every duty pertaining to his occupation as the result of such accident.
* * * * * *

*866 "B. PARTIAL DISABILITY. When, as the result of injury and commencing within 30 days after the date of the accident or immediately following a period of total disability for which indemnity is payable under Paragraph A of this Part, the Insured is continuously disabled and prevented from performing one or more of the important duties of his occupation, the Company will pay periodically fifty per cent of the Monthly Accident Indemnity stated in the Schedule for each month of such disability, not to exceed six consecutive months as the result of any one accident."
The facts, we think, establish plaintiff's total disability. He is unable, because of the injuries sustained, to perform the substantial and material acts of his occupation as a groceryman in the usual and customary way. Such conclusion is in accord with the jurisprudence of this State in interpreting similar provisions of accident and life insurance policies. For instance, in the case of Crowe v. Equitable Life Assur. Soc., 179 La. 444, 154 So. 52, 54 (1934), the Supreme Court of Louisiana said:
"* * * we think that the true rule governing cases of this kind is stated in 7 Couch on Insurance, § 1670, p. 5769, as follows, viz.:
"`* * * It may be said, generally speaking the provisions in life, health and accident insurance policies for indemnity in case the insured becomes totally, permanently or wholly disabled, etc., do not require that he shall be rendered absolutely helpless, but, rather, merely requires such disability as renders him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. At least such a rule has been in substance adhered to, where the policies required that he be totally disabled from transacting any and every kind of business. * * *'
"The rule is stated in 14 R.C.L., § 491, p. 1315, as follows, viz.:
"`The rule prevailing in most jurisdictions is that the total disability contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness which can result only from loss of reason, since as long as one is in full possession of his mental faculties he is capable of transacting some part of his business, whatever it may be, although he is incapable of physical action. On the contrary, these courts, giving consideration to the object of the contract, hold that the "total disability" contemplated by the agreement is inability to do substantially all the material acts necessary to the prosecution of the insured's business or occupation in substantially his customary and usual manner.'"
In Boughton v. Mutual Life Ins. Co. of New York, 183 La. 908, 165 So. 140, 143-144 (1935), a farmer of plantation status, who prior to his disabling injury not only supervised the operation of his 700-acre farm but performed numerous acts of manual labor such as driving tractors, baling hay, repairing fences, and herding cattle, but who, after his disabling injuries, continued his farming operations through the medium of tenant farmers and with the assistance of relatives, was held totally disabled within the meaning of the insurance contract.
A comparable, factual situation was presented in Pearson v. Prudential Ins. Co. of America, 214 La. 220, 36 So.2d 763, 768 (1948), wherein it was stated:
"Obviously, this plaintiff, just as the insured in the Boughton case, could not now gain employment as a farm manager, overseer or superintendent. Due to his present physical disability and his condition of restricted activity, he can not reasonably perform the services required of a person in that occupation. *867 His disability, therefore, being such as to render him unable to perform the substantial and material acts of his business or occupation in the usual and customary way, and coming within the rule announced by our jurisprudence, plaintiff is entitled to recover in this action."
The principles enunciated in the aforesaid cases have been uniformly applied in this State. Madison v. Prudential Ins. Co. of America, 190 La. 103, 181 So. 871 (1938); Harris v. New York Life Ins. Co., 195 La. 853, 197 So. 579 (1940); Strauss v. New York Life Ins. Co., 204 La. 202, 15 So.2d 61 (1943); Nomey v. Pacific Mut. Life Ins. Co., 212 La. 820, 33 So.2d 531 (1948); Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409 (1951).
For the aforesaid reasons, we conclude, as did the trial court, that plaintiff is totally disabled within the definition of that term as contained in the insurance contract.
Defendant contends, however, that indemnity should not be paid for a period exceeding 24 months, under the provision defining "total disability," where the insured is prevented from performing each and every duty pertaining to his occupation, instead of for a period as long as the insured is disabled from performing each and every occupation or employment for wage or profit for which he is reasonably qualified by reason of education, training, or experience. This position, we feel, is without merit inasmuch as it is not established that, by reason of his education, training, or experience, the insured is reasonably qualified to perform any occupation or employment for wage or profit.
We find no basis, however, for imposition of penalties and attorney's fees. The action of the defendant in refusing payment and in presenting its defense is not shown to be such arbitrary action as would justify the infliction of these penalties.
The judgment appealed is therefore affirmed at defendant-appellant's cost.
Affirmed.

On Motion for Rehearing
PER CURIAM.
Among the alleged errors of which defendant complains in a motion for a rehearing are two allegedly patent upon the face of the record. These relate to the failure of the judgment appealed (1) to take into account a 14-day elimination period following the accident, for which no indemnity is payable, or (2) to recognize that indemnity is only payable for such periods of disability during which the insured is under the regular care and attendance of a currently licensed physician or surgeon.
There is no basis for the first of the aforesaid objections. While the policy provides for a 14-day elimination period, the judgment substantially complies therewith by providing that indemnity shall be paid from the date of the accident "less a two (2) week waiting period."
With reference to the second of these objections, it may be observed that the policy provides, as defendant contends, that
"The Accident Elimination Period, if any, shall neither commence nor continue, nor indemnity be paid under this Part, for any period of disability during which the Insured is not under the regular care and attendance of a currently licensed physician or surgeon, * * *."
However, as we construe the judgment awarding plaintiff indemnity until the termination of his disability, there was no intention, express or implied, to relieve him of compliance with the provisions of the policy upon which the payment of future indemnity is contingent.
With these observations, the motion for a rehearing is accordingly denied.