342 So.2d 664 (1977)
Sylvester Ray JOHNSON
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 58391.
Supreme Court of Louisiana.
January 24, 1977.
Rehearing Denied March 2, 1977.
*665 Iddo Pittman, Jr., Pittman & Matheny, Hammond, for defendant-respondent.
Charles B. W. Palmer, Amite, for plaintiff-applicant.
MARCUS, Justice.
This is a suit for recovery of benefits under "Coverage T-Total Disability" provisions of an automobile insurance policy issued to Sylvester Ray Johnson by State Farm Mutual Automobile Insurance Company. Plaintiff also seeks penalties and attorney fees.
Coverage T provides as follows:
Coverage TTotal DisabilityMaximum 200 Weeks. To pay weekly indemnity at the rate stated in the exceptions for the period of continuous total disability of the insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while in or upon or while entering into or alighting from, or through being struck by, an automobile, provided (1) such liability shall commence within twenty days after the date of the accident, and (2) any disability during the period of fifty-two weeks from its commencement shall be deemed total disability only if it shall continuously prevent the insured from performing every duty pertaining to his occupation, and (3) any disability after said fifty-two weeks shall be deemed total disability only if it shall continuously prevent the insured from engaging in any occupation or employment for wage or profit, and (4) the weekly indemnity for total disability as provided herein above shall in no event extend beyond a period of 200 consecutive weeks from the date of commencement of disability as provided above.
On Saturday, July 27, 1972, plaintiff sustained bodily injuries resulting from an automobile accident. Plaintiff was fortyfive years old at the time and had been employed as a sawyer for some twenty-seven years. His employment as a sawyer required strenuous physical activity on his part. At the time of his injury, plaintiff was earning about $240 per week. Plaintiff was taken from the accident scene to the hospital where he was treated for complaints of pain in his head, neck and back and was then released. On the following Monday, Mr. Johnson went to work at the saw mill but, because of pain in his neck and back, he was able to work for only two days. Plaintiff was seen by Dr. C. G. Forrest on August 1, 1972. At this time, plaintiff complained of headaches, a severe crick in the neck and pain up and down his spine. According to Dr. Forrest, plaintiff had rigid cervical muscles and pain with turning his neck in either direction. He remained at *666 home unable to return to work and continued to be treated by Dr. Forrest. Against the advice of Dr. Forrest and for economic reasons, plaintiff returned to his occupation as a sawyer on September 4, 1972. While at work, plaintiff continued to experience pain despite the fact that he took pain medication. He underwent home traction upon the advice of Dr. Forrest and traveled to Hammond after working hours for heat treatment and therapy. During this period, he also continued to be treated by Dr. Forrest. On January 10, 1973 (some seventeen weeks after he had returned to work) plaintiff suffered a blackout. Dr. Forrest then recommended that plaintiff see a neurosurgeon. Plaintiff was thereafter treated by Dr. Homer D. Kirgis, a neurosurgeon.
During the period from January until June, 1973, Dr. Kirgis performed two myelograms (one on January 29, 1973 and the other on June 4, 1973) and a discogram (on June 25, 1973) on plaintiff for a suspected cervical injury. Dr. Kirgis concluded that plaintiff had a ruptured intervertebral disc at the cervical level. Plaintiff was also seen by Dr. John D. Jackson in May of 1973. After suit was filed on October 23, 1973, plaintiff was examined by Drs. Richard W. Levy and George R. Cary, Jr. at the request of defendant.
The trial judge found that plaintiff was totally disabled as a result of the accident (July 27, 1972) and that his disability continued during the entire period of coverage (200 weeks). He made a specific finding that at no time since the accident had plaintiff been free of pain. Accordingly, he awarded plaintiff benefits for the entire period of coverage (200 weeks) subject to a credit of $1,250 for the twenty-five weeks of disability payments previously paid.[1] The trial judge also found that State Farm's failure to pay the claims under the policy subjected it to a penalty of double the amount of benefits due together with reasonable attorney fees which the court fixed at $4,500. Defendant appealed. Plaintiff answered the appeal seeking an increase in the award for attorney fees.
The court of appeal found that plaintiff was totally disabled from the date of the accident (July 27, 1972) until he returned to work on September 4, 1972. He worked full time from then until January 10, 1973 when he again became totally disabled because of a ruptured disc in the cervical spine. The appeal court further found that, although plaintiff was working in pain between September 4, 1972 and January 10, 1973, the record did not suggest that plaintiff was unable to perform every duty of his occupation. Accordingly, plaintiff's disability was not continuous from the time of the accident. As a result, plaintiff was not entitled to recover benefits for any disability subsequent to his return to work. Judgment of the trial court was reversed and plaintiff's suit was dismissed. 334 So.2d 478 (La.App.1st Cir.1976). We granted plaintiff's application for certiorari to review the correctness of this judgment. 337 So.2d 878 (La.1976).
Our review of the record reveals that plaintiff suffered a disabiling injury as a result of the automobile accident on July 27, 1972. There is no serious dispute that his disability was total and continued until he returned to work on September 4, 1972. Defendant paid plaintiff benefits under the policy during this period. At this point in time, plaintiff's injury had not yet been diagnosed as a ruptured disc. The record does not indicate the extent to which plaintiff performed the duties of his occupation when he returned to work; however, it does support a finding that he continued to work in pain without any intervening cause. It is also clear that, after plaintiff blacked out on January 10, 1973, the injury about which he had continuously complained was diagnosed as a ruptured disc. The medical testimony fully supports this finding. Therefore, plaintiff's subjective complaints of pain were corroborated by this subsequent *667 diagnosis. Plaintiff made no further attempt to return to work.
The pivotal issue for our determination is whether the continuity of plaintiff's disability was broken by his returning to work for seventeen weeks (September 4, 1972 to January 10, 1973), during which period he apparently performed all duties of his occupation even though he worked in pain and ultimately abandoned his employment because of his disabling injury. The court of appeal considered that plaintiff's disability was not continuous under these circumstances. We disagree.
The condition in the policy providing for payments in the event plaintiff becomes totally disabled from performing every duty of his occupation during the period of fifty-two weeks from the commencement of the disability or thereafter if he is unable to engage in any occupation or employment for wage or profit does not mean that plaintiff must, in order to avail himself of these benefits, become absolutely helpless, but merely requires such disability as renders him unable to perform the substantial and material part of his occupation in the usual and customary way.[2] Whether or not total disability is continuous depends upon the facts and circumstances of each case.
In the instant case, plaintiff had worked at his occupation as a sawyer for many years prior to being injured as a result of an automobile accident on Saturday, July 27, 1972. He attempted to return to work on the following Monday but was compelled to quit after two days because of severe pain in his head, neck and back. He immediately sought and underwent medical treatment to help alleviate his disability. He remained at home in a disabled condition for some five weeks. Against the advice of his treating physician and for economic reasons,[3] plaintiff again attempted to return to work on September 4, 1972. While at work, plaintiff continued to experience pain despite the fact that he took pain medication. He underwent home traction and traveled to Hammond after working hours for heat treatment and thereapy. He also continued to be seen by Dr. Forrest during this period. Finally, on January 10, 1973, some seventeen weeks after he had returned to work, plaintiff blacked out. Thereafter, he was treated by Dr. Kirgis, a neurosurgeon, who concluded that plaintiff had suffered a ruptured disc at the cervical level. Plaintiff abandoned any further attempt to return to work.
We are convinced, under the facts and circumstances of this case, that plaintiff's total disability was continuous despite the fact that he returned to work for a period of seventeen weeks. In other words, the continuous nature of plaintiff's disability was not negated or broken by his attempt to return to work during the period in question under the circumstances herein. We further find that plaintiff's total disability extended through the period of maximum coverage under the policy. Accordingly, plaintiff is entitled to benefits for 200 weeks at the rate of $50 per week from the date of commencement of disability (July 27, 1972), subject to a credit of $1,430 for payments previously made.[4]

*668 We must next consider plaintiff's claim that the discontinuance of benefit payments by defendant was arbitrary, capricious or without probable cause, thereby subjecting it to the payment of penalties and attorney fees.
An insurer's conduct in discontinuing payment of benefits under a policy must be judged primarily upon the facts existing and known to it at the time the payment was stopped. These facts must justify the discontinuance for the insurer to escape the penalty provisions of the statute. Guillory v. Travelers Insurance Company, 294 So.2d 215 (La.1974); Lee v. Smith, 248 La. 16,176 So.2d 413 (1965). Where there is a valid dispute between the claimant and the insurer as to the cause of claimant's disability or as to whether claimant is in fact disabled, no penalties and attorney fees are due.
In the instant case, no payments were made after July 10, 1973. A letter from claim superintendent, Tommy Seabaugh, to agent, Joe Foulks, dated July 11, 1973, stated:
I note that Dr. Forrest indicates on the report he sent to us that Mr. Johnson had a ruptured disc.
Again, in a letter dated July 16, 1973, Seabraugh wrote to Foulks and stated:
There is no question that Mr. Johnson is totally disabled to perform any kind of work.
Defendant did not seek to have plaintiff examined by medical experts until after suit was filed on October 23, 1973.
Considering the record as a whole, we are convinced that defendant insurance company knew that plaintiff had suffered a disabling injury at the time payments were discontinued. There was no medical testimony to the contrary at this time. Therefore, there was no valid dispute as to whether plaintiff was in fact disabled. Nor does the record reveal any valid dispute as to the cause of plaintiff's disability. Under these circumstances, we find no manifest error in the conclusion of the trial judge that defendant's discontinuance of benefit payments to plaintiff was arbitrary, capricious and without probable cause.
The trial judge assessed penalties provided by La. R.S. 22:657. We consider that he erred in this respect.
La. R.S. 22:656 provides the time within which payment of death claims shall be made. La. R.S. 22:657 provides when payment of all "claims arising under the terms of health and accident contracts" shall be paid. And La. R.S. 22:658 provides when payment shall be made by all "insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657."
La. R.S. 22:6 classifies and defines insurance as follows:

. . . . .
(2) Health and accident. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness and every insurance appertaining thereto.
(3) Vehicle. Insurance against loss or damage to any land vehicle or aircraft or any draft or riding animal or to property while contained therein or thereon or being loaded or unloaded therein or therefrom, and against any loss or liability resulting from or incident to ownership, maintenance, or use of any such vehicle or aircraft or animal.
Insurance against accidental death or accidental injury to individuals including the named insured while in, entering, alighting from, adjusting, repairing, cranking, or caused by being struck by a vehicle, aircraft, or draft or riding animal, if such insurance is issued as part of insurance on the vehicle, aircraft, or draft or riding animal, shall be deemed to be vehicle insurance.

. . . . .
Plaintiff's claim is based on insurance coverage against accidental injury resulting from an automobile accident. The insurance was issued to plaintiff as part of an automobile insurance policy. Under the clear language of the above quoted provisions. we conclude that the policy involved in the present suit is not health and accident *669 insurance under La. R.S. 22:657 but, rather, vehicle insurance under La. R.S. 22:658. Therefore, the penalty provisions of this latter statute are applicable here. Defendant insurer is subject thereunder to a penalty, in addition to the amount due, of 12% damages on the amount due, together with reasonable attorney fees.
After reviewing the record and considering the time spent by plaintiff's attorney in the trial court, court of appeal and this court in the prosecution of this claim, we find that an award of $2,500 would be adequate under the circumstances. We consider that the trial judge abused his discretion in fixing attorney fees at $4,500.
We find no error in the fixing of expert witness fees of Drs. Levy, Cary, Jackson and Forrest at $100 each by the trial judge. However, we do consider that he abused his discretion in fixing the expert witness fee of Dr. Kirgis of $250. Dr. Kirgis did not testify at trial; however, his deposition was used. Since his deposition was more extensive than the other doctors deposed, we feel that $150 would be adequate under the circumstances.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and set aside; it is ordered that there be judgment in favor of plaintiff, Sylvester Ray Johnson, and against defendant, State Farm Mutual Automobile Insurance Company, condemning defendant to pay plaintiff benefits for 200 consecutive weeks at the rate of $50 per week from the date of commencement of disability (July 27, 1972), subject to a credit of $1,430 for payments previously made, together with legal interest from date of judicial demand until paid on payments due prior to judicial demand and on those payments due thereafter legal interest from the date each payment became due until paid, plus a penalty of 12% damages on the total amount of benefits due and attorney fees of $2,500. Expert witness fees are taxed as costs in the sum of $100 each to Drs. Levy, Cary, Jackson and Forrest and in the sum of $150 to Dr. Kirgis. All costs of these proceedings are taxed to defendant.
DIXON, J., dissents from the reduction of the attorney fee, but otherwise concurs.
NOTES
[1] The trial judge found that defendant made payments to plaintiff in the sum of $250 on February 21, 1973; $350 on April 19, 1973; $250 on May 21, 1973; $200 on June 13, 1973; and $200 on July 10, 1973.
[2] Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409 (1951); Nomey v. Pacific Mut. Life Ins. Co., 212 La. 820, 33 So.2d 531 (1947); Strauss v. New York Life Ins. Co., 204 La. 202, 15 So.2d 61 (1943); Harris v. New York Life Ins. Co., 195 La. 853, 197 So. 579 (1940); Crowe v. Equitable Life Assur. Soc., 179 La. 444, 154 So. 52 (1934); Miller v. American Cas. Co., 263 So.2d 398 (La.App.4th Cir. 1972), writ refused, 262 La. 1151, 266 So.2d 441; Felker v. Aetna Life Ins. Co., 234 So.2d 758 (La.App. 1st Cir. 1970), writ refused, 256 La. 377, 236 So.2d 503; Pete v. Metropolitan Life Ins. Co., 171 So. 868 (La.App. 1st Cir. 1937); Cates v. Jefferson Standard Life Ins. Co., 159 So. 168 (La.App.2d Cir. 1935); Manuel v. Metropolitan Life Ins. Co., 139 So. 548 (La.App.1st Cir.1932).
[3] The disability benefits under the policy were only $50 per week, whereas plaintiffs'weekly salary as a sawyer was approximately $240.
[4] See footnote 1 for listing of amounts and dates of payments made by defendant to plaintiff as found by the trial judge. In addition to these payments, we find that defendant paid plaintiff the sum of $180 on October 25, 1972. This accounts for the difference between the total amount of payments found by the trial judge ($1,250) and that found by this court ($1,430).