DOMENGEAUX, Judge.
Two life insurance policies with an aggregate face value of $15,000.00 provided that the issuer of the policies would pay one-half the face amount thereof ($7,500.00) if the insured became totally and permanently disabled. Three issues confront us: (1) Did the insured prove his disability was total and permanent? (2) If so, was the insurer arbitrary and capricious in refusing to pay the insured’s claim? (3) Did the trial court err in imposing the 100% penalty provided in La.R.S. 22:657 rather than the 12% penalty provided in 22:658?
Plaintiff, Francis Paul Tarpley, suffered a back injury on April 4, 1978, when he and a fellow worker attempted to lift a heavy pipe. At the time, Mr. Tarpley was employed as a maintenance man by the La-Salle Parish School Board.
Following his injury, plaintiff was initially treated by a chiropractor whose care produced no results. He was next seen by a Doctor Turnley, who x-rayed plaintiff and diagnosed his injury as back strain compounded by arthritis and a bad disc. Then, on May 19, 1978, Mr. Tarpley first saw Dr. John T. Weiss, an orthopaedist, who thereafter treated plaintiff approximately once a month until he last examined Mr. Tarpley on February 15, 1979. At that time Doctor Weiss recommended that plaintiff retire from his maintenance job with the School Board for reasons explained later.
At the time of his injury, Mr. Tarpley owned two life insurance policies issued by the Woodmen of the World Life Insurance Society, Inc., the defendants.[1] On March 2, *1069 1979, plaintiff made application for total and permanent disability benefits under the policy. This request was denied by W. 0. W. on April 2, 1979. Plaintiff then filed suit on May 25, 1979, and a non-jury trial was conducted on September 28, 1979. For reasons orally assigned, the trial court rendered judgment in favor of Mr. Tarpley and against Woodmen of the World Life Insurance Society in the amount of 50% of the face value of the two policies issued to Mr. Tarpley with credit for $8,054.48 already paid.[2] The court further found the penalty provisions of La.R.S. 22:657 applied to both policies and the Society was condemned to pay penalties of 100% of the amount due, or $4,445.52. Attorney’s fees of $1,750.00 were also awarded, with W. O. W. being liable for %rds of that amount, or $1,441.32. The court further assessed %rds of the court costs to Woodmen of the World. From that judgment the Society has taken this appeal.
TOTAL AND PERMANENT DISABILITY
The trial court found that Mr. Tarp-ley was totally and permanently disabled due to the injury which occurred on April 4, 1978. The evidence contained in the record supports this factual determination.
In the ten month period following the injury, plaintiff’s condition remained substantially unchanged. The back pain persisted and Mr. Tarpley could not engage in any strenuous activities. During this time, plaintiff, then 55 years old, seemed eager to return to work and felt he could work without much problem as long as he did not do heavy lifting or tractor driving.
Doctor Weiss acceded to Mr. Tarpley’s wishes and permitted him to return to his job on a light work basis on October 12, 1978. However, the School Board would not allow plaintiff to return to work on this basis. The School Board advised him that he could return to work only when he was allowed to do regular work activities. On November 27, 1978, Mr. Tarpley was allowed to resume his regular work activities provided that he wear a corset for support. The School Board would not accept Mr. Tarpley on this basis either, and refused to let him return to work.'
Finally, Doctor Weiss allowed plaintiff to resume full work activities as of January 22, 1979, but he advised Mr. Tarpley to wear a corset without the knowledge of the School Board. About two weeks later, plaintiff notified Doctor Weiss that he could not perform his duties even with the support because he had experienced discomfort in his back while attempting to do some lifting.
On February 15, 1979, Doctor Weiss advised plaintiff to retire. This recommendation was made for two reasons: (1) Mr. Tarpley was unable to do his work even when he wore a corset, and (2) Doctor Weiss felt plaintiff’s condition was static and would not improve.
W. O. W. does not dispute the fact that Mr. Tarpley experiences serious pain in his back when engaging in strenuous activities. However, the defendant argues that the evidence conclusively establishes that the plaintiff, by virtue of his previous training and experience, is not unemployable and thus is not totally disabled. The cornerstone of the defendant’s argument is a letter written by Doctor Weiss dated March 27, 1979 (over a month after Doctor Weiss advised plaintiff to retire), which states:
“I feel Mr. Tarpley is capable of doing light work that would not require any significant bending or lifting, and walking that was not continuous and prolonged but only intermittent.”
Together with Doctor Weiss’ letter, defendant relies on plaintiff’s testimony that he once worked as a clerk in a hardware store to presumably conclude that plaintiff is employable as a clerk.
*1070 We find no merit to defendant’s argument. The record reveals that Mr. Tarpley is a 56 year old man who has primarily been engaged in heavy manual labor since he dropped out of school in the 8th grade. At that time, in 1938 or 1939, he enlisted in the Civil Conservation Corps to paint pine trees, deaden timber, and do other conservation work. During World War II, he worked in a warehouse at Camp Livingston and delivered heavy cases of supplies to the PX. After the war he did “pulp wooding” and later he operated a power saw cutting pulp wood. He was also hired as a truck driver to haul the wood.
The employment that defendant relies heavily upon occurred more than thirty years ago in 1946 or 1947. Even this job required Mr. Tarpley to stoop or bend and left heavy objects because he was not only a clerk — he also delivered cement, roofing, and other heavy objects to job sites.
Plaintiff began working for the School Board in the 1950s doing maintenance work. His jobs included painting, roofing, plumbing, carpentry work, burying shorelines, digging them up and unstopping them, and general manual labor. This is the only work he had engaged in for the last 25 to 30 years until his back injury forced his retirement in 4979.
We believe plaintiff has established his disability to be total and permanent despite Doctor Weiss’ opinion that he could perform light work. The likelihood of Mr. Tarpley ever again becoming gainfully employed in a position requiring only light work is remote when factors such as his age, his back problem, and his work history are considered. Defendant’s belief that plaintiff’s education and experience establishes em-ployability as a clerk is sheer speculation wholly unsupported by the record. We therefore affirm the trial court’s finding on this issue.
PENALTIES AND ATTORNEY’S FEES
Defendant contends that the trial court erred in awarding penalties and attorney’s fees. Alternatively, defendant argues that the provisions of La.R.S. 22:658 should apply rather than the provisions of 22:657. We will dispose of the former contention first.
On March 14, 1979, Woodmen of the World received an extensive report detailing Doctor Weiss’ treatment of Mr. Tarpley from May 19, 1978, when the plaintiff first saw Doctor Weiss, through February 15, 1979 (the last visit) when retirement was advised. In the report, the defendant was also informed of the reasons why plaintiff was advised to retire. W. O. W. knew plaintiff’s disabling condition would not improve. Nevertheless, defendant further inquired of Doctor Weiss whether Mr. Tarp-ley was able to perform employment tasks for which he was qualified by training or experience if such tasks did not include heavy lifting or riding a tractor. On March 29, 1979, defendant received Doctor Weiss’ answer stating that Mr. Tarpley could return to light work which required no significant bending, lifting, or walking. On the basis of this letter from Doctor Weiss, the defendant rejected Mr. Tarpley’s claim on April 2, 1979. Woodmen of the World suggests that Doctor Weiss’ letter constituted reasonable grounds for refusing to honor plaintiff’s claim. We disagree.
Defendant was not justified in relying upon Doctor Weiss’ opinion that plaintiff could return to light work. The Society had earlier been put on notice by Doctor Weiss’ medical report that plaintiff could not work, even with support, that his condition would not improve, and that he had been advised by Doctor Weiss to retire from the only job he had performed for 25 years. After receiving Doctor Weiss’ “light work” opinion, defendant should have investigated further to determine whether Mr. Tarpley’s training and experience did, in fact, qualify him to perform any light work duties. Although Doctor Weiss probably knew best which physical limitations were created by plaintiff’s disability, his role as a treating physician hardly qualified him to decide which employment tasks Mr. Tarpley could perform by reason of his training and experience. That information should have come from more knowledgeable sources, such as *1071 Mr. Tarpley himself or his former employers. Defendant’s failure to elicit this information from the appropriate sources before denying Mr. Tarpley’s claim was unreasonable. Therefore, plaintiff is entitled to recover attorney’s fees and penalties. Without explanation, the trial court held that the policies were governed by 22:657 and awarded to plaintiff as a penalty 100% of the principal amount owed. We think plaintiff is entitled only to the 12% penalty provided by 22:658.
The applicability of R.S. 22:657 is limited, by its own language, to “ . . [a]ll claims arising under the terms of health and accident contracts . . . ” Mr. Tarpley’s claim arises under the terms of two life insurance contracts which contained provisions for benefits payable to the insured in the event of total and permanent disability.
La.R.S. 22:6, which defines and classifies insurance, distinguishes life insurance from health and accident insurance in the following manner:
“(1) Life. Insurance on human lives and insurance appertaining thereto or connected therewith. For the purposes of this Code the transacting of life insurance includes the granting of annuities or survivorship benefits; additional benefits in the event of death by accident; additional benefits in event of the total and permanent disability of the insured; and optional modes of settlement of proceeds.
(2) Health and accident. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness and’ every insurance appertaining thereto.” (Emphasis added)
According to the plain language of the above statute, Mr. Tarpley’s claim arises under life insurance contracts notwithstanding the fact that payment is due under disability clauses in the contracts.
La.R.S. 22:658 and its 12% penalty provision applies to “ . . . any type of contract other than those specified in R.S. 22:656 and 22:657 ...” Neither 22:656 (which applies only to death claims) nor 22:657 (relative to health and accident policies) pertains to claims arising under life insurance contracts. Therefore, the provisions of 22:658 apply.
Our conclusion is dictated by the Supreme Court case of Johnson v. State Farm Mutual Automobile Insurance Company, 342 So.2d 664 (La.1977). There, plaintiff was totally disabled as a result of an automobile accident. He sued for recovery of benefits under total disability provisions of an automobile insurance policy issued to him by defendant. The trial judge found that defendant’s failure to pay plaintiff’s claim under the policy subjected it to a penalty of double the amount of benefits due, as provided by La.R.S. 22:657. In holding that 22:658 should apply rather than 657, the Supreme Court used the following rationale:
“La.R.S. 22:6 classifies and defines insurance as follows:

(2) Health and accident. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness and every insurance appertaining thereto.
(3) Vehicle. Insurance against loss or damage to any land vehicle or aircraft or any draft or riding animal or to property while contained therein or thereon or being loaded or unloaded therein or therefrom, and against any loss or liability resulting from or incident to ownership, maintenance, or use of any such vehicle or aircraft or animal.
Insurance against accidental death or accidental injury to individuals including the named insured while in, entering, alighting from, adjusting, repairing, cranking, or caused by being struck by a vehicle, aircraft, or draft or riding animal, if such insurance is issued as part of insurance on the vehicle, aircraft, or draft or riding animal, shall be deemed to be vehicle insurance. [Emphasis added]

Plaintiff’s claim is based on insurance coverage against accidental injury result *1072 ing from an automobile accident. The insurance was issued to plaintiff as part of an automobile insurance policy. Under the clear language of the above quoted provisions, we conclude that the policy involved in the present suit is not health and accident insurance under La.R.S 22:657 but, rather vehicle insurance under La.R.S. 22:658. Therefore, the penalty provisions of this latter statute are applicable here. Defendant insurer is subject thereunder to a penalty, in addition to the amount due, of 12% damages on the amount due, together with reasonable attorney fees.” (Emphasis added)
The language of R.S. 22:6(1), which includes within the definition of life insurance “additional benefits in event of the total and permanent disability of the insured” is every bit as clear as the language of 22:6(3) relied upon by the Supreme Court in Johnson to avoid imposing 100% penalties of 22:657. Johnson’s rationale mandates the same result here.
Accordingly, the judgment of the District Court will be amended to provide for penalties of 12% rather than penalties of 100% on the principal sum due.
DECREE
For the above and foregoing reasons the judgment of the District Court is amended to reduce from 100% to 12% the amount of penalty owed on the outstanding principal balance of $4,445.52. In all other respects the judgment is affirmed. Costs are assessed against Woodmen of the World Insurance Society, the defendant.

AFFIRMED, AS AMENDED.

. Originally, plaintiff also sued Consolidated American Life Insurance Company. Following trial, that suit was settled and a signed judgment dismissed plaintiff’s suit against Consoli *1069 dated. Therefore, Consolidated is no longer a party to these proceedings.

. Following W. O. W.’s rejection of his claim, Mr. Tarpley requested and received from W.- O. W. the cash surrender value of the two policies. This amount-$3,054.48-is the amount W. O. W. has received credit for paying.