SAMUEL, Judge.
This is a suit for total disability benefits, penalties and attorney’s fees under an injury and sickness policy issued by plaintiff to defendant. Plaintiff alleges he was injured in an automobile accident on January 16, 1970. Following trial, judgment was rendered in favor of plaintiff for $200 per month for life from the date of the accident,[1] reimbursement of premiums paid and judicial interest on all sums due from date of judicial demand. The claim for penalties and attorney’s fees was denied.
Defendant has appealed and plaintiff has appealed from that part of the judgment denying his claim for penalties and attorney’s fees.
The basic issue is whether plaintiff is totally disabled within the meaning of the policy as a result of the accident in suit.[2] The policy provision pertinent to this issue reads as follows:
“Coverage A. Total Disability due to Injury: If injury sustained by the Insured results in total disability commencing within ninety days from the date of the accident .. . the Company will pay periodically, the Monthly Indemnity Benefit for each month throughout which such disability continues ... but for not longer than the period indicated in the Schedule under Maximum Indemnity Period .... If, due to injury a period of total disability ... commences ... more than ninety days after such injury ... such total disability shall ... be deemed to have been due to sickness.” (Emphasis ours).[3]
The schedule of monthly benefits provides for $200 per month for total disability for injury for “Lifetime” and the maximum indemnity period for sickness is $200 per month for 24 months.[4]
Under the clear unambiguous terms of the policy we conclude that unless the total disability commenced within 90 days from the date of the accident, the insurer is correct in treating the claim as deemed to have been due to sickness.
The trial court found plaintiff was totally disabled from May, 1970, but awarded benefits from the date of the accident. If, as found by the trial court, the total disability did not occur until May, 1970 (more than 90 *310 days from the date of the accident), plaintiff’s claim is limited by the schedule to a maximum award of $200 per month for two years.
We note the policy definition of total disability differs depending upon the period of disability.[5] Prior to the payment of benefits, plaintiff must be completely unable to perform every duty pertaining to his occupation.
However, after monthly indemnity benefits have been payable under the policy, Definitions (2) provides:
“... ‘total disability’ means the complete inability of the Insured to engage in any and every gainful occupation for which he is reasonably fitted by education, training or experience, due to such sickness or injury, provided that ‘total disability’ shall not exist for any purpose of this policy during any period in which the Insured is engaged in his or any other gainful occupation.’’
Plaintiff’s occupation prior to the accident was that of a journeyman carpenter. He performed rigorous duties, such as climbing and lifting heavy objects. Since the accident, plaintiff avers he has worked only as a foreman, directing others in those strenuous duties.
The medical evidence does not convince us that plaintiff was totally disabled within 90 days of the accident. His treating physicians until 1971 (including an orthopedic surgeon) diagnosed plaintiff’s back problems as referable to preexisting arthritis. All of the doctors, with the exception of Dr. Kenneth E. Vogel, who performed a lami-nectomy on plaintiff in March, 1971, failed to relate plaintiff’s problems to the accident. While Dr. Vogel stated plaintiff had a 20% disability of bodily function referable to the accident, and would be unable to do heavy lifting or climbing, he did not state plaintiff was unable to work in any capacity. In fact, Dr. Vogel advised plaintiff to return to work but to avoid lifting, pushing or pulling weights over 35-50 pounds.
Plaintiff had an exemplary work record following the accident. According to the report of Dr. George C. Battalora, Jr., plaintiff’s orthopedic specialist, plaintiff worked after January 16, 1970 until five weeks prior to July 8, 1970, was off until July 20, 1970 and then returned to work. In examinations by this physician on July 29, and August 26, 1970 the doctor approved of plaintiff’s continuing to work.
Plaintiff worked for Hugh O’Connor Construction Company from January 16 to June 11, 1970, for 843 hours, or an average of 40 hours per week. The work history furnished to defendant indicates from January, 1970 to January, 1971 plaintiff also worked at Fishman Construction Company for 304 hours, Fassulo Drugs 84V2 hours and Benning’s Construction Company.
Dr. Battalora’s report indicates plaintiff was able to resume his previous work on October 17, 1970. On the basis of that information, defendant treated plaintiff’s disability as a sickness claim [i. e., disability occurring more than 90 days after the accident] and on April 21,1971 paid that claim.
On June 21, 1971 plaintiff filed a further claim for neurosurgical consultation, with surgery in April, 1971 by Dr. Vogel. Defendant then paid benefits through April 29, and on July 9 paid benefits through May 29,1971. At that time Dr. Vogel felt plaintiff could return to light duty work.
In April, 1971 plaintiff received medical reports from Dr. Battalora indicating specific periods of disability from July 8, 1970 to July 21, 1970 and September 20, 1970 to October 17, 1970. There was further evidence of disability from March 20, 1971 to March 29, 1971. Dr. Vogel’s report of July 17, 1971 indicated plaintiff returned to work on May 19, 1971. As we have indicated, plaintiff was paid benefits through May 29, 1971.
The evidence is clear that plaintiff worked for extended periods on many jobs following the accident. He worked on con *311 struction at the Hilton Hotel, at the Dome garage, constructing Woolco Department Store, working for American Seating (again in the Dome), when he had a heart attack while employed by that company in 1974 and 1975. He is now totally unable to work since his heart attack.
Plaintiff’s tax returns for 1970-1977 (with the exception of 1971 which is not in evidence) clearly show he was gainfully employed. He listed his occupation as carpenter, except for the year 1977, when he described his occupation as construction supervisor.
Since we are not dealing with a tort or a workmen’s compensation claim, we are bound by the clear provisions of the policy. We find that plaintiff was not totally disabled within 90 days from the occurrence of the accident, nor was he totally disabled from engaging in any gainful occupation for which he was fitted. The position of a carpenter foreman may not have afforded plaintiff as much overtime as he received as a carpenter, but it is a position that he not only was capable of filling, but in fact did fill.
We also note that under the policy provisions plaintiff was not entitled to benefits during any period in which he was gainfully employed. We are of the opinion plaintiff was paid at least as much, if not more, than he was entitled to under the clear terms of the policy.
For the reasons assigned, the judgment appeal from is reversed and it is now ordered that there be judgment in favor of defendant, dismissing plaintiff’s suit at his cost in both courts.

REVERSED.

. Subject to a credit for payments made.

. Defendant has raised again in this court an exception of lack of notice and proof of loss denied by the trial court. The policy calls for notification within 20 days of the accident and defendant claims they were not notified of the accident until August 3, 1970, although a claim was made on or about March 1, on another matter [plaintiff has been beaten up by police]. We pretermit a lengthy discussion on this allegation because we prefer to base our opinion on other grounds, and because we do not find defendant was prejudiced by the notification delay. See Miller v. Marcantel, La.App., 221 So.2d 557; Kinchen v. Dixie Auto Ins. Co., La.App., 343 So.2d 263; Barnes v. Lumbermen’s Mutual Casualty Co., La.App., 308 So.2d 326.

. It will be noted this provision distinguishes this case from Massengill v. Aetna Life Ins. Co., La.App., 394 So.2d 764. In Massengill the policy did not provide that total disability must commence within 90 days.

. The policy also provides benefits of one-half the monthly benefit for partial disability for a period up to six months for injuries resulting from one accident, but plaintiff made no claim under this provision.

. See Foret v. Aetna Life & Cas. Co., La.App., 337 So.2d 676, for a somewhat similar provision.