412 So.2d 1301 (1982)
Ellis T. LABORDE
v.
EMPLOYERS LIFE INSURANCE COMPANY.
No. 81-C-2183.
Supreme Court of Louisiana.
April 5, 1982.
Rehearing Denied May 14, 1982.
Michael R. Holmes, Gerald Thos. Laborde, New Orleans, for applicant.
Robert E. Leake, Jr., Hammett, Leake & Hammett, New Orleans, for respondent.
*1302 CALOGERO, Justice.
Under the provisions of a disability policy insuring against injury or sickness, plaintiff Ellis T. Laborde obtained a judgment in the Civil District Court for the Parish of Orleans requiring the defendant-insurer, Employer's Life Insurance Company, to pay him $200 per month for life. The pertinent section of the policy was Coverage A, relative to total disability caused by injury. The Court of Appeal reversed upon finding that plaintiff had not become totally disabled because of injury during the ninety day period immediately following the accident as required by the policy. 400 So.2d 308 (La.App. 4th Cir. 1981).
We granted writs to review that judgment, prompted by the belief that the Court of Appeal perhaps had not properly considered the decisions of this Court in Johnson v. State Farm Mutual Automobile Insurance Company, 342 So.2d 664 (La.1977) and Crowe v. Equitable Life Assurance Society of the United States, 179 La. 444, 154 So. 52 (La.1934) in assessing plaintiff's disability within the ninety day period after the accident.
Disability definitions like the one involved here ("complete inability of the insured due to sickness or injury to perform every duty pertaining to his occupation") have been construed as requiring not a state of complete helplessness but only an "inability to do substantially all the material acts necessary to the prosecution of the insured's business or occupation in substantially his customary and usual manner." Crowe, supra at 54. Furthermore, in Johnson we held that the continuous nature of plaintiff's disability was not negated or broken by his attempt to return to work under the circumstances therein, and that whether total disability is continuous depends upon the facts and circumstances of each case.
Nevertheless, upon review of the testimony, exhibits, policy provisions and jurisprudence, we find that the Court of Appeal's disallowance under the policy of injury-induced total disability was correct. On the other hand, we find that the Court of Appeal was not correct insofar as it disallowed the unpaid portion of the twenty-four months of benefits for total disability under the sickness provision of the policy.
The insurance policy in question allows lifetime benefits for total disability caused by injury (Coverage A), six months of benefits for partial disability (Coverage B, not at issue here), and twenty-four months of benefits for total disability caused by sickness (Coverage C). The scheme of the policy is as follows:
If injury sustained by an insured results in total disability commencing within ninety days from an accident, it causes an injury disability and carries a $200 monthly disability benefit for each month the disability continues, for the life of the insured.
If an injury results in total disability commencing more than ninety days after an accident, or if total disability is caused by sickness rather than by injury, it is a sickness disability and the company, after deducting a seven day elimination period, will pay the monthly indemnity benefit for each month such total disability continues for a specified period, in this case twenty-four months.
The term "total disability" is defined alternately in the policy depending on the time frame involved. For the twenty-four month period of sickness disability and for the first sixty months of injury disability, total disability "means the complete inability of the insured due to sickness or injury to perform every duty pertaining to his occupation..." If the disability continues beyond these periods, the definition of total disability becomes "the complete inability of the insured to engage in any and every gainful occupation for which he is reasonably fitted by education, training or experience due to such sickness or injury...," for the remainder of the time, if any, for which monthly indemnity benefits are payable.
Whether defendant is entitled to injury induced total disability benefits, for life, or sickness disability for a maximum of twenty-four months, depends upon whether plaintiff suffered an injury and whether *1303 the injury resulted in total disability commencing within ninety days from the accident.
Both courts below found that plaintiff's total disability did not commence within the required ninety day period. To counter this, plaintiff suggests the trial judge's statement that plaintiff became unable to perform his regular duties in May of 1970 (more than ninety days after the accident) is inconsistent with his awarding plaintiff total disability benefits. He contends this was an unintentional misstatement in the trial judge's reasons for judgment.
Giving plaintiff the benefit of the doubt, we have weighed the evidence unaffected by the trial court's finding in this regard. Even doing so we still find, as the Court of Appeal did, and as the trial judge apparently did, that indeed there was no proof of total disability commencing within ninety days of the accident.
Rather we find the facts to be the following. Plaintiff suffered an injury in an automobile accident on January 16, 1970, for which he received medical treatment. From January 16 to June 11, 1970, plaintiff worked for Hugh O'Connor Construction Company an average of 40 hours per week. For the two week period beginning on May 20, 1970, when Laborde was still working as a journeyman carpenter, his longtime trade, he was doing only light work, his partner handling all the heavy lifting and climbing. After this May 1970 employment, Laborde was listed with the union not as a journeyman carpenter but as a carpenter foreman or supervisor. Laborde saw Dr. Battalora, an orthopedic specialist, from July 8, 1970, through January 27, 1971. During the examinations on July 19 and August 26, 1970, Dr. Battalora encouraged Laborde to continue work and keep active as a "carpenter foreman" and as a "carpenter inspector" who does "lighter work than a carpenter foreman performs." Laborde was hospitalized by a neurosurgeon, Dr. Kenneth Vogel, on March 29, 1971, had a double laminectomy performed upon him on April 8, and remained hospitalized until April 22, 1971. Laborde continued working as a carpenter foreman or supervisor with a period of work loss disability for an ear infection in 1972 until he became totally unable to work following a heart attack in 1974, a bout with pneumonia and another heart attack in 1975.
In this case plaintiff did not prove that he became disabled within ninety days of the accident.[1] There was no proof of limitation in his work activity from January 16, 1970 to May 20, 1970. Testimony and exhibits offered at trial support the findings of the Court of Appeal in this regard. Furthermore with regard to the required ninety day onset of disability, plaintiff does not get any help from Crowe and Johnson. Those cases are helpful as relates to Laborde's claim only relative to his sickness disability, for he did not establish any disability within a ninety day period following the accident.[2]Crowe and Johnson have to *1304 do with the character of established disability and the effect of the restrictive policy definitions.
Nevertheless plaintiff is not barred entirely from recovering additional benefits under the policy. Coverage C of the policy allows recovery for total disability for a period of twenty-four months not only for sickness but also for injury induced disability which manifests itself more than ninety days after an accident. As noted earlier, that total disability is defined as the "complete inability of the Insured ... to perform every duty pertaining to his occupation." It is in the interpretation of this policy language that the Crowe tradition, and the Johnson case in particular, become pertinent.
While the definition might imply otherwise, it has been interpreted liberally to permit recovery for total disability without the need to prove that an insured is reduced to a state of abject helplessness. Crowe, supra; Madison v. Prudential Ins. Co. of America, 190 La. 103, 181 So. 871 (1938); Nomey v. Pacific Mut. Life Ins. Co., 212 La. 820, 33 So.2d 531 (La.1948); Pearson v. Prudential Ins. Co. of America, 214 La. 220, 36 So.2d 763 (La.1948). In Johnson, supra at 667, we interpreted language which defined total disability as the inability to engage in "every duty of his occupation" to mean the inability to "perform the substantial and material part of his occupation in the usual and customary way." The standard by which we are to assess Laborde's disability is therefore whether he could have performed the substantial and material part of his occupation in the usual and customary way.
As indicated earlier in this opinion, Laborde presented no proof that disability occurred within the requisite ninety day period. However, following May 1970, his situation was shown to be different. A co-worker testified that Laborde was not able to engage in the heavy physical labor, the lifting, or climbing that was required of journeymen carpenters. Union records show him classified as foreman or supervisor. His brother as a union officer helped him find supervisory work. Dr. Battalora's deposition and letters stated that Laborde could continue working, but his job at the time was carpenter inspector/supervisor, not journeyman carpenter. Laborde underwent spinal fusion in 1971, after which Dr. Kenneth Vogel wrote to the insurer concerning the course of Laborde's recovery and his ability to return to "light work" on May 29, 1971. We determine from that evidence that Laborde was disabled according to the Johnson definition, i.e. unable "to perform the substantial and material part of his occupation [journeyman carpenter] in the usual and customary way" for a twenty-four month period commencing with his receiving medical treatment from Dr. Battalora in July of 1970.
The insurer has paid Laborde some benefits under the sickness provision of the policy, excluding the elimination period, the first seven days of disability. Defendant issued four checks to the plaintiff: on April 21, 1971, a check for $233.33 for 35 days of total disability from 7/15/70 to 7/22/70 and 9/20/70 to 10/18/70; on June 23, 1971, a check for $200.00 for 30 days total disability *1305 from 3/29/71 to 4/29/71; on July 9, 1971, a check for $200.00 for 30 days total disability from 4/29/71 to 5/29/71; and on July 19, 1971, a check for $200.00 for "full and final settlement". The latter check plaintiff did not cash. At most only 125 days were paid and the benefits were terminated upon the insurer's receiving a letter from Dr. Vogel certifying that plaintiff was able to return to "light" work.
Plaintiff's evidence supports a finding that he was totally disabled because he was "unable to perform the substantial and material part of his occupation in the usual and customary way" (Johnson, supra at 667), not only for the time that he was off work, but continuously on and after July, 1970 when he sought medical help from Dr. Battalora, and following which he worked with the help of his brother and co-workers. He is therefore owed the balance of the twenty-four months of sickness disability benefits.[3]
Plaintiff argues additionally that premium reimbursement is due him under a premium waiver provision of the policy. The provision on which he relies reads in pertinent part:
Waiver of Premium: If injury or sickness results in total disability covered by the policy and such disability continues for a period of at least ninety consecutive days, the policy will continue in force and the Company will waive all premium payments, the payment date for which falls during any further continuous period of total disability for which income is payable. The premium to be waived and the payment date thereof shall be that in effect when such continuous period of disability began.
Because we find that Ellis Laborde is owed monthly indemnity benefits because of sickness disability for a continuous twenty-four month period, plaintiff is owed reimbursement for the premiums he paid on the policy for that period of disability.
Finally plaintiff argues that attorney's fees and penalties are due under La.R.S. 22:657 because of the defendant's failure to pay timely the benefits owed him under the policy provisions. La.R.S. 22:657 states in pertinent part:
A. All claims arising under the terms of health and accident contracts issued in the state, ... shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. (Emphasis provided.)
The defendant argues that it paid all benefits for which the insured submitted claim forms.
Upon examining the record and numerous documents submitted into evidence, we agree with the defendant. Plaintiff's claim submissions were spotty at best. When the insurer was notified of the possibility of a claim on or about April 14, 1970, claim forms were mailed promptly to the plaintiff on May 4 and again on May 18, 1970. Plaintiff dallied in returning the claim forms and appropriate documentation. The claim forms and proofs of loss submitted were not for continuing total disability but for specific disability periods while under the care of Dr. Battalora and Dr. Vogel. Each claim submitted for out-of-work periods, the insurer paid. Under these facts it seems clear that the insurer did not violate La.R.S. 22:657 and plaintiff is therefore not entitled to penalties and attorney's fees.
*1306 In summary, we find that the plaintiff Ellis Laborde is owed monthly indemnity benefits under his insurance policy Coverage C for sickness disability for the maximum of twenty-four months beginning with the documented proof of loss received by the defendant (7/15/70 because of the seven day elimination period) with credit for the benefits already paid by the insurer. Furthermore, he is entitled to reimbursement for the premiums that he paid from November 1970 (90 days after disability began in July 1970) through June 1972. However, his request for attorney's fees and penalties under La.R.S. 22:657 is denied.

Decree
For these reasons, the judgment of the Court of Appeal is reversed and the judgment of the district court is reversed in part. There will be judgment in favor of the plaintiff and against the defendant in the sum of $387.60 premium reimbursement (four semi-annual premiums @ $96.90) and $4800 indemnity benefits, subject to a credit for the amount of benefits already received, with legal interest from the date of judicial demand and for all costs.
REVERSED AND RENDERED.
NOTES
[1] At trial plaintiff presented into evidence a letter and claim form dated 6/4/70, a form not received by the insurer until 8/3/70, which characterized the disability from the accident as partial and continuing. The defense offered into evidence a copy of this same claim form on which, when returned for specification of the dates and character of disability by Dr. Talbot the treating physician, the word "total" was added in regard to disability and the designation "house confinement" was checked along with an entry "from 1/24/70 through 2/14/70." This supplementation was received by the defendant insurer on March 12, 1971. However, plaintiff's work history in January and February 1970 does not support a finding of three weeks house confinement. Additionally, when a friend of the insured and employee of the defendant, Charles Levy, wrote in April 1971 to the home office to expedite the claim of the insured, the medical reports and claim forms attached thereto denoted total disability only for the periods 7/8/70 through 7/21/70 and 9/20/70 through 10/17/70.
[2] Furthermore the conditions of plaintiffs Crowe and Johnson were considerably more severe than that of Laborde.

In Crowe an illiterate fifty year old man who suffered pain from any physical exertion, while walking, while standing erect, and even while sitting down, and whose injury required him to refrain from "the exactions of any fixed employment" was found to be totally disabled despite defendant's argument that he could still perform "light work." 154 So. at 54. In Johnson, it was plain from the record that the injury from the automobile accident was totally disabling, that the plaintiff in his two separate attempts to return to work did so out of economic necessity, against the advice of his doctor and was forced to quit once after two days because of severe pain and once later after seventeen weeks because of blacking out on the job. Thereafter he was never able to return to work.
In contrast, the Court of Appeal found that Laborde
... had an exemplary work record following the accident....
Plaintiff worked for Hugh O'Connor Construction Company from January 16 to June 11, 1970, for 843 hours, or an average of 40 hours per week.
The work history furnished to defendant indicates from January, 1970 to January, 1971 plaintiff also worked at Fishman Construction Company for 304 hours, Fassulo Drugs 84½ hours and Benning's Construction Company. 400 So.2d 310.
Following his surgery in 1971, Laborde worked on construction at the Hilton Hotel, at the Dome garage, at Woolco Department Store, for American Seating at the Dome Stadium and elsewhere until he suffered the heart attacks which eventually caused his retirement.
[3] The Court of Appeal had found recovery barred by a provision in the definitions portion of the policy, that "`total disability' shall not exist for any purpose of this policy during any period in which the Insured is engaged in his or any other gainful occupation." Under the same rationale as espoused in Crowe, i.e., that total disability does not require absolute helplessness, such language has not defeated an otherwise valid claim for total disability where the disabled insured was forced for economic reasons to work at some job. See Felker v. Aetna Life Insurance Company, 234 So.2d 758 (La.App. 1st Cir.) writ denied 256 La. 377, 236 So.2d 503 (La.1970) citing Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409 (La. 1951).