517 So.2d 1212 (1987)
Harold J. YURATICH, Sr.
v.
CONTINENTAL CASUALTY COMPANY and Zenith Radio Corporation.
No. CA 7290.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1987.
Writ Denied February 12, 1988.
*1213 Paul B. Spurlock, New Orleans, for plaintiff-appellant.
Kenneth C. Hughes, New Orleans, for defendant-appellee Continental Cas. Co.
Before GULOTTA, C.J., and SCHOTT and BYRNES, JJ.
SCHOTT, Judge.
This is a claim for disability benefits under an insurance policy issued by defendant to plaintiff while he was employed by Zenith Radio Corporation as a service representative. The trial court awarded benefits for the period commencing twenty-six weeks (the policy's elimination period) after plaintiff was discharged in June, 1974 until April, 1978 when plaintiff took another job. Plaintiff appealed, seeking an extension of benefits beyond April, 1978 and statutory penalties and attorney fees. Defendant contends that plaintiff failed to prove that he was disabled prior to the termination of the policy when plaintiff was discharged. Defendant also re-urges an exception of prescription because plaintiff failed to file a proof of loss within the delay prescribed by the policy.
Plaintiff was employed by Zenith from March, 1968 until June 3, 1974 when he was terminated. His work involved consulting with Zenith service managers and conducting service schools in a number of southern states. While attending a convention in Las Vegas in July, 1973 he became ill and consulted his physician, Dr. Paul Naccari, upon returning home.
After admitting him to the hospital for testing Naccari diagnosed hypoglycemia with signs of heavy drinking and smoking. After several more visits, in March, 1974 Nacarri referred plaintiff to an internist because of his drinking, an enlarged liver, depression, anxiety, and weak spells. Nacarri recommended that plaintiff take time off from work for medical treatment. Nacarri testified from his records that plaintiff saw an internist, Dr. Rabito, who admitted him to the hospital from April 12 to 16. Dr. Rabito did not testify at trial or by deposition. Dr. Nacarri testified that plaintiff "went downhill" from April 16, 1974 and he considered plaintiff disabled from working at this time and no better when he saw plaintiff next in November, 1974.
After plaintiff's April hospitalization he asked his supervisor for a leave of absence, which was denied, and in June he was discharged. In 1978 plaintiff went to work for Brannon Sales Company doing work similar to what he had done for Zenith. He worked under the supervision of a friend who was Brannon's service manager. He had told the supervisor he could work in a "sitting position" and was hired for what he described as a rather sheltered job in which his supervisor would do the physical and manual labor, service the appliances, set up meetings, and drive him to the meeting where he would lecture from a sitting position. When the supervisor retired in 1980 plaintiff left the company because of his illness and consequent inability to do the job on a normal basis.
Dr. Jackson, an internist, treated plaintiff between October 4, 1974 and July, 1976. After a hospitalization in December, 1974 he diagnosed an enlarged liver, alcholic hepatitis, and diabetic mellitus. He prescribed Valium and recommended that *1214 plaintiff stop drinking and smoking. After a hospitalization in August, 1975 Dr. Jackson diagnosed cirrhosis of the liver, obstructive pulmonary disease and reactive hypoglycemia. Although Dr. Jackson had difficulty recalling details of plaintiff's condition or treatment (ten years prior to trial) he felt that plaintiff could not perform his job in 1976 but that some of his problems would cease, especially the cirrhosis of the liver if he stopped drinking and smoking.
Dr. James T. Flanigan, an internist, testified that he began treating plaintiff in 1978 and hospitalized him March, 1979. At that time plaintiff had chronic bronchitis along with paresthesia of the arms and legs. Noting that plaintiff had been treated for hyperthyroidism, nervousness, dizziness and weakness, he continued to treat him on an outpatient basis. He stated that plaintiff "was becoming progressively worse" and as late as November, 1984 plaintiff was disabled from performing substantial gainful labor. In connection with the tardiness in the filing of his claim with defendant, plaintiff stated that he was going through some papers at his home in December, 1975, when he discovered the certificate of insurance of which he was theretofore unaware. He filed his claim shortly afterwards, and he filed the present suit in August, 1977. The policy contains the follow provisions:
Written notice of claim must be given to the Company within twenty days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible.
Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which the policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the Company is liable and in case of claim for any other loss within ninety days after the date of the loss. Failure to furnish such proof within the time required shall not validate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.
Defendant argues that this clearly required plaintiff to file his claim within ninety days after June 3, 1974 because that was the date when the policy expired. Defendant argues that this is the date referred to in the policy as the "termination of the period for which the Company is liable." Defendant further argues that the last phrase quoted above "one year from the time proof is required" means one year from September 3, 1975. Thus, defendant would have us conclude that plaintiff's claim, initiated in December, 1975, was prescribed.
On the other hand, plaintiff argues that "the period for which the company is liable" clearly refers to the period in which plaintiff is entitled to receive benefits under the policy, i.e., when he attains the age of sixty-five. We find that there is enough merit to this argument to conclude that the policy is at least ambiguous enough to warrant an interpretation against its drafter, the defendant. If defendant meant the date when the policy terminated it should have said so in plain English rather than to use vague and ambiguous language. As far as the one year cut off is concerned, the policy's reference to "the time proof is otherwise required" refers to the phase which we find is ambiguous, so that the one year period cannot be applied against plaintiff. Defendant's exception of prescription was correctly overruled.
Defendant next argues that plaintiff failed to prove he became disabled before he was discharged and the policy terminated. The trial court's factual conclusion in this regard will not be overturned in the absence of manifest error. From our review of the record, especially the testimony of Dr. Naccari and plaintiff, we cannot conclude that the trial court committed manifest error.
Next we turn to plaintiff's argument that the trial court erred in terminating his benefits when he went to work for Brannon in April, 1978. This case was referred by the trial judge to a commissioner *1215 pursuant to LSA-R.S. 13:1171 and his report and recommendation were adopted by the trial court. The report contains the following:
Plaintiff urges that benefits should continue beyond his subsequent employment by Brannon Service Corporation on April 15, 1978. The contract however, provides that the insured ceases to be "totally disabled" if he becomes "engaged in any occupation or employment for wage or profit for which he is reasonably qualified by education, training and experiences." It was not the intention of the policy to pay benefits to an insured who is gainfully employed. Hence, benefits are to run only throught April 15, 1978.
The entire definition of Total Disability in the policy is as follows:
"Total Disability" means the continuous inability of the Insured Employee to engage in each and every occupation or employment for wage or profit for which he is reasonably qualified by education, training or experience; however, during the applicable Elimination Period and the first 24 months thereafter the Insured Employee shall be deemed totally disabled while he is (1) unable to perform each and all the material duties pertaining to his occupation, and (2) not engaged in any occupation or employment for wage or profit for which he is reasonably qualified by education, training or experience.
In Laborde v. Employers Life Insurance Co., 412 So.2d 1301 (La.1982) the court dealt with a similar definition with respect to a plaintiff who had been employed as a journeyman carpenter prior to an accident and was able to function afterwards as a carpenter or carpenter-supervisor doing light work and being sheltered from the heavy physical labor, the lifting, or climbing demanded of journeyman carpenters. In concluding that the plaintiff was entitled to be considered disabled despite the language of the policy the court stated:
"While the definition might imply otherwise, it has been interpreted liberally to permit recovery for total disability without the need to prove that an insured is reduced to a state of abject helplessness..... The standard.... is therefore whether he could have performed the substantial and material part of his occupation in the usual and customary way."
Because the trial court committed legal error in deciding that plaintiff's employment by Brannon automatically terminated his entitlement to benefits, the court failed to make the factual determination prescribed by the Supreme Court in the Laborde case.
We are mindful that the preferred result in this court would be for the factual determination to be made on the basis of the record, but we are unable to take such action in this instance because of the state of the record. The question is whether plaintiff could have performed as he did previous to his alleged disability when he took the sheltered job with Brannon. The only evidence of record on this issue is the testimony of plaintiff and Dr. Flanigan. Plaintiff's testimony is conclusory and self serving. Flanigan's is vague and sketchy, largely because of the passage of so much time from the dates of the Brannon employment until the trial in March, 1986. Because the resolution of the issue depends wholly upon the weight and credibility to be assigned to this testimony the trial court is in a far better position to make the initial decision. For this reason the case will be remanded to the trial court for the purpose of deciding whether plaintiff was disabled after April, 1978 in accordance with he law as contained in the Laborde case.
Our decision to remand is bolstered by two additional considerations. First, the defendant faces a possible substantial loss for past benefits since April, 1978 plus continued benefits until plaintiff reaches sixty-five. Because of the state of the record, fairness and justice require that the parties have an opportunity to develop a full and complete record and to have the factual determination made by the trier of fact. Second, we note that plaintiff, in his reply brief, suggested a remand with the instruction that employment at a different job, does not, per se, terminate benefits.
*1216 Turning to the question of plaintiff's entitlement to penalties and attorney's fees we find no abuse of discretion in the trial court's refusal to assess them. Because plaintiff filed his claim so late and because the question of his disability was not clear defendant's refusal to pay was not arbitrary, capricious or without probable cause. R.S. 22:658.
Accordingly, the judgment appealed from is affirmed to the extent of plaintiff's entitlement to benefits until April 15, 1978 and his non-entitlement to penalties and attorney fees but the judgment is set aside to the extent that benefits are disallowed after April 15, 1978. The case is remanded to the trial court for a determination of whether plaintiff is entitled to benefits after April 15, 1978 in accordance with the views expressed in this opinion. All costs are assessed against defendant.
AFFIRMED IN PART; SET ASIDE IN PART; AND REMANDED.