YELVERTON, Judge.
This case began eight years ago in 1983 when Ronald C. Talley had a heart attack on the job. The first attack was soon followed by another, then heart surgery and a quadruple bypass. He was employed as the Oklahoma Division Manager of Associated Oil Tools, Inc., a subsidiary of Enserch Corporation. Disabled, he filed suit for worker’s compensation benefits and medical expenses.
On September 20, 1985, four days before trial of the worker’s compensation case, the Enserch Corporation Employee Benefit Trust (the Trust) intervened in the worker’s compensation suit to recover disability payments and medical expenses it had paid Talley. This intervention sought reimbursement of the benefits paid by the Trust should Talley be successful in his worker’s compensation suit. Because the intervention was filed so close to the trial date, the trial court severed the Trust’s intervention and the worker’s compensation case went to trial by itself.
The trial court awarded Talley worker’s compensation benefits for a total and permanent disability, all medical expenses, and penalties and attorney’s fees. That judgment was appealed. This court modified the judgment, holding that on the evidence presented Talley was not totally and permanently disabled under the strict provisions of the Louisiana Worker’s Compensation Law, but that he suffered a temporary total disability through the year 1985. This court affirmed the trial court’s denial of credits for the medical expenses and disability payments paid by the Trust. We also affirmed the award of penalties and attorney’s fees. Talley v. Enserch Corp., 508 So.2d 197 (La.App. 3rd Cir.), writ denied, 513 So.2d 289, 513 So.2d 290 (La.1987).
The intervention remained pending in the trial court. Talley had received short-term disability benefits from the Trust beginning in 1983 for a period of thirty months, as provided by The Associated Oil Tools Employee Benefit Plan (the Plan). Long-term benefits began after thirty months of short-term benefit payments. Talley had also received comprehensive medical expense benefits under the Plan, duplicating medical expenses paid under worker’s compensation.
The Trust terminated his long-term benefits in 1987. The Trust’s intervention was amended to seek reimbursement of all benefits that had been paid, both disability and medical. Talley filed reconventional demands to the intervention alleging that the termination was improper, asking that his benefits be reinstated, and seeking an award of attorney’s fees.
The intervention and reconventional demands were then tried. The trial court decided that Talley was totally disabled under the Plan definition, and that his long-term disability benefits had been wrongfully terminated. The trial court also found that the Trust was entitled to a credit for the worker’s compensation benefits paid by the employer as to the long-term disability benefits, but not as to the medical expense benefits. Finally, Talley was awarded $8,500 in attorney’s fees. The Trust now appeals this decision and raises four assignments of error.
In deciding this case we apply, as we must, the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. § 1001, et seq. Cramer v. Association Life Ins. Co., 569 So.2d 533 (La.1990).
TRIAL COURT
STANDARD OF REVIEW
The Trust’s first assignment of error is that the trial court erred in applying a de novo standard of review of the Plan administrator’s decision to terminate Talley’s benefits.
A denial of benefits under a plan governed by ERISA is to be reviewed under a “de novo” standard unless the benefit *618 plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. If the administrator or fiduciary has discretionary authority, the reviewing court should apply an “abuse of discretion” standard. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); Batchelor v. Intern. Broth. of Elec. Wkrs., Local 861, 877 F.2d 441 (5th Cir.1989).
Section 3.06 of the trust agreement in the present case states in part:
Each Plan document shall specify the manner of supervision of the administration and enforcement of the Plan according to the terms and provisions hereof and thereof and the Plan administrator specified therein shall have all powers necessary to accomplish these purposes, including, but not by way of limitation, the right, power, authority and duty:
# * * * * *
(b) to construe all terms, provisions, conditions and limitations of the Plan, provided that in all cases, the construction necessary for the Plan and Trust to qualify under Section 501(c)(9) of the Code shall control;
# # * * * ⅜
(e) to determine all questions relating to eligibility;
(f) to determine the amount, manner and time of payment of any benefits thereunder, and to advise the Committee or its delegate thereof;
* * * * * *
(h) to make a determination as to the right of any person to a benefit under the Plan;
Article III of the Plan incorporates by reference the terms of the trust agreement. In our view, the quoted language above gives the administrator, or fiduciary, discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Therefore, the proper standard of review is the “abuse of discretion” standard, and not the de novo standard.
The trial judge, in reaching the conclusion that the administrator’s decision to terminate Talley’s long-term benefit was reversible, believed that the standard of review employable in this case would probably be de novo. However, he declared that the standard of review made no difference because, in any event, the administrator’s ruling amounted to an abuse of discretion. The trial court gave thorough, and excellent reasons for judgment. Our review of the trial court’s judgment will be directed to determining whether his decision that the administrator abused his discretion is manifestly erroneous.
Under the abuse of discretion standard of review announced by Bruch, the methodology requires that a court first determine the legally correct interpretation of the plan’s provisions. If the administrator has not given a plan the legally correct interpretation, the court must then determine whether the administrator’s interpretation constitutes an abuse of discretion, and proceed from there. Jordan v. Cameron Iron Works, Inc., 900 F.2d 53 (5th Cir.1990), cert. denied, — U.S. —, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990); Kennedy v. Electricians Pension Plan, 755 F.Supp. 700 (M.D.La.1991).
Expounding on the scope of the administrator’s or fiduciary’s discretion, the Bruch case stated:
Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a ‘factor[ ] in determining whether there is an abuse of discretion.’ Restatement (Second) of Trusts § 187, Comment d (1959).
109 S.Ct. at 956-957. In the present case, the trial court noted that the decision to terminate Talley’s long-term disability benefits was made by Richard K. Sanders, the benefit plan’s administrator. Sanders was appointed plan administrator in 1986, and he also served a dual role as Vice President of Human Resources for Pool Company, a subsidiary of Enserch Corporation. The trial court found that Sanders erroneously relied on the Louisiana Worker’s Compen *619 sation definition of total and permanent disability, rather than the different Plan definition. The trial court also found that Sanders limited his decision to terminate benefits on the reports of only three doctors, ignoring other available medical evidence. Because Sanders lacked expertise in the medical field, the trial court believed that he should have sought advice from other experts and considered all of the available medical information, before making the decision to terminate benefits. The trial court noted that as plan administrator, Sanders owed a fiduciary obligation to Talley and not to the company. 29 U.S.C.A. 1104. The trial court recognized a conflict of interest between the fiduciary duty owed to Talley and Sander’s decision to terminate benefits. The decision was founded on insufficient information and a legally incorrect interpretation of the Plan’s provision, which benefited the plan administrator’s employer. A conflict of interest lessens the discretion afforded an administrator’s decision to terminate benefits. Brown v. Blue Cross & Blue Shield of Alabama, 898 F.2d 1556 (11th Cir.1990).
Answering the appellant’s first assignment of error, therefore, we agree that the trial court’s observation in its reasons for judgment, that the case could be reviewed under the de novo standard, was error. However, the trial court actually reviewed the case for an abuse of discretion, which was not error. Therefore, the trial court’s error has no effect on the outcome of the case.
DISABILITY
The second issue is the contention that the trial court erred in determining that Talley was entitled to long-term disability benefits under the provisions set out in the Plan. The Trust argues that Talley was not totally disabled because testimony was presented at trial that he could perform a sedentary job. It urges that under the Plan provisions, Talley must be unable to perform any type of job in order to qualify for long-term benefits.
Section 2.1(g) of the Plan states that total disability means:
(1) during the portion of any period of disability not exceeding thirty (30) months, Total Disability means the complete inability of the Employee due to sickness or injury to perform any and every duty pertaining to his occupation with the employer; and
(2) during the remainder, if any, of the period of disability, Total Disability means the complete inability of the Employee due to sickness or injury to engage in any and every gainful occupation for which he is reasonably fitted by education, training, or experience.
Enserch provided its employees with an employee benefit summary booklet which contains this language:
Your LTD Plan provides for a regular monthly income if you become totally disabled.
You are considered to be “totally disabled” if, due to illness or injury, you are totally unable to perform your job with your employer and are not employed anywhere else. After 30 months, you are considered to be “totally disabled” only if you are unable to perform any job you would normally be able to do, based on your education, experience, etc. To be considered totally disabled, you must be under qualified medical care.
Monthly benefit payments will begin after a 6-month waiting period. (During this time you will be entitled to benefits from your Plan for short-term disability.)
The record shows that one reason for the Plan administrator’s decision to terminate benefits was the Louisiana Worker’s Compensation definition of total disability, La. R.S. 23:1221, which we discussed in the first appeal, 508 So.2d, at 202. Permanent total disability under the Louisiana Worker’s Compensation Law means physical inability to engage in any occupation “... whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience.” The definition in the Plan and the Plan summary, however, requires only that an employee be unable to engage in any occupation for which he is *620 reasonably fitted by education, training or experience.
Talley’s work history was managerial. When he had his first heart attack in June 1983, he was employed as the Oklahoma Division Manager for Associated Oil Tools, Inc. He held this position for one and one-half years and worked for the parent company, Enserch Corporation, a total of two and one-half years. Some of his duties were to rent oilfield equipment, solicit business, supervise a sales force and clerical staff, prepare a budget, set salaries, give promotions, and handle public relations.
Previously, Talley was a Vice President of a bank in charge of installment loans for three years. Before that, he was Assistant Manager, later promoted to Manager, of a branch of that bank for a total of seven years. He also ran a finance company’s installment loan branch for five years. After being discharged from the army he got his first job with a title insurance company as a sales representative. Talley completed a couple of years in a junior college.
Appellant refers us to two medical reports. Dr. James Knoepp, one of the cardiovascular surgeons who performed the open heart surgery, stated in a letter that Talley could handle a sedentary job. Dr. P.K. Kaimal, a specialist in cardiology, also stated in a letter report that Talley was capable of handling a sedentary job.
There was considerable other evidence to the contrary. Based on the record made up at the worker’s compensation trial in 1985, this court on appeal found that Talley was temporarily totally disabled. The trial court heard additional evidence at the second trial in 1989. In its reasons for judgment the trial court said:
This court concludes, based upon a review of the entire record of these proceedings, including the evidence presented at the worker’s compensation case, as well as the evidence presented at the hearing of August 18, 1989, that Ronald C. Talley has overcome his burden of proof in establishing that he qualifies for benefits pursuant to the total disability definition of the Enserch Corporation Employee’s Benefit Trust. This determination is the same regardless of whether the disability definition of total disability applicable is that of the Employee’s Benefit Summary, or that of the plan itself. Additionally, Talley’s disability has been established for both ‘long term disability’ time periods under the plan. In reaching this conclusion, the court obviously considers the medical testimony adequate to reach such a determination, but also places significant emphasis on its evaluation of Talley himself and the emotional conditions under which he suffers as he presented himself to the court. The court concludes that this man is certainly not able to engage in any gainful occupation for which he is reasonable [sic] fitted by education, training, or experience, and this condition has existed continuously since July 12, 1983.
The record supports the trial court’s conclusion. Dr. Paul Ware, a psychiatrist who treated Talley, stated in his deposition that he diagnosed Talley as suffering from severe depression secondary to the heart disease and subsequent coronary bypass. At the time of trial, Talley remained under the medical supervision of two doctors, a general practitioner, Dr. Robert Kendrick, and a cardiologist, Dr. Freedman.
Elaborating on his observation of Talley's psychological condition in 1989, the trial judge said:
In the presentation of his testimony, Talley became obviously emotionally overwhelmed with his situation. His appearance before the court was clearly that of an individual who feels he has lost his social skills, his ability to engage in basic social intercourse, and his ability to be a productive active member of society. The emotional response by Talley in the court room was one that was not staged but very real in its spontinuity [sic]. The testimony of Talley’s wife and son further substantiated his worsening physical and psychological condition.
The trial court has had the benefit of presiding at two trials in this case, one in 1985 and another in 1989. Both trials involved Talley’s disability and Talley testified at both.
*621 The plan and plan summary definitions of total disability did not require that Talley prove he was reduced to a state of helplessness. LaBorde v. Employers Life Ins. Co., 412 So.2d 1301 (La.1982). Talley had to show only that he could not engage in any occupation for which he was reasonably fitted by education, training or experience.
In the first trial, we found that Talley had proved a temporary total disability through 1985. Sanders, the Plan administrator, testified that he based his decision to terminate partly on our opinion. The remaining bases for his decision, Sanders testified, were the reports (not the depositions) of three physicians. This medical information was included in the evidence on which the trial court’s decision, and subsequently ours, was based in the worker’s compensation case. Thus, when Sanders decided to terminate long-term disability in 1987, he did so on the basis of no more information than was previously known to the courts in the worker’s compensation case. In fact, he disregarded part of the medical information that was then available. At the trial, he testified that he thought that Talley could go back to banking work, but admitted that he had overlooked the medical restrictions that Talley avoid stressful situations.
It is also clear from the record that, as the trial court stated, “[Sanders] accepted the appeals [sic] court’s definition of disability and failed to recognize that it was not the applicable definition.” Thus, Sanders was unfamiliar with the terms of the Plan which he administered, and applied a definition of disability different from that contained within the plan. Sanders equated the Plan’s total permanent disability definition with the Louisiana worker’s compensation total and permanent disability definition, which was error. He also equated our finding that Talley was temporarily totally disabled through 1985 with the unjustified conclusion that Talley would suffer no disability after that date.
These considerations, coupled with evidence of a conflict of interest which lessens the discretion of the Plan administrator, cause us to conclude that the trial court was not clearly wrong in its decision that Talley qualified for benefits under the total and permanent provision of the Plan, and that the administrator abused his discretion in finding otherwise.
REIMBURSEMENT FOR MEDICAL EXPENSES
In its third assignment of error, the Trust contends that the trial court erred by failing to reimburse it the amount of $42,-080.50 paid for medical expenses. Between July 1983 and February 1987, Talley received $42,080.50 in medical benefits from the Trust. After this court held the employer liable for worker’s compensation benefits in the earlier appeal, Talley received a reimbursement for medical expenses in the amount of $42,409.77 from his employer. The trial court denied the Trust’s claim for reimbursement for the medical expenses.
This was error. The Trust paid the medical under its employee welfare benefit plan. The Plan specifically excluded benefits covered by worker’s compensation laws. This circuit has held that a group medical insurer whose policy excluded claims covered by worker’s compensation, has no obligation under its policy, and may recover such payments paid in error. DeVillier v. Highlands Ins. Co., 389 So.2d 1133 (La.App. 3rd Cir.1980); Mathews v. Louisiana Health Serv. & Ind. Co., 471 So.2d 1199 (La.App. 3rd Cir.1985).
Talley argues the application of La. R.S. 22:663, which states:
Notwithstanding any other provisions in this title to the contrary, no group policy of accident, health or hospitalization insurance, or of any group combination of these coverages, shall be issued by any insurer doing business in this state which by the terms of such policy group contract excludes or reduces the payment of benefits to or on behalf of an insured by reason of the fact that benefits have been paid under any other individually underwritten contract or plan of insurance for the same claim determination period. Any group policy provision *622 in violation of this section shall be invalid.
This statute is inapplicable for two reasons. First, worker’s compensation insurance is not an “individually underwritten contract or plan of insurance” as set out in the statute. The intent of the legislature was to prohibit coordination of benefits where individually underwritten and group insurance policies are involved, but not to prohibit coordination where only group insurance policies are involved. Ermert v. Union Labor Life Ins. Co., 339 So.2d 927 (La.App. 4th Cir.1976), writ refused, 341 So.2d 1129 (La.1977). This court in the earlier appeal affirmed the trial court’s ruling that Talley’s employer was self-insured for purposes of worker’s compensation. 508 So.2d at 207.
Secondly, the statute is preempted by the provisions of ERISA. Hansen v. Continental Ins. Co., 940 F.2d 971 (5th Cir.1991).
ATTORNEY’S FEES
Finally, appellant contends that the trial court erred by awarding Talley attorney’s fees in the amount of $8,500.00. In an ERISA case, the court in its discretion may allow a reasonable attorney’s fee to either party. 29 U.S.C. 1132(g) states that a court should consider such factors as the degree of the opposing parties’ culpability or bad faith, the ability of the opposing parties to satisfy an award of attorney’s fees, whether an award of attorney’s fees against the opposing parties would deter other persons acting under similar circumstances, whether the parties requesting attorney’s fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself, and the relative merits of the parties’ positions. Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255 (5th Cir.1980). In his reasons for judgment, the trial judge stated that he considered and applied these five factors before awarding Talley attorney’s fees.
We find no manifest error in an award of attorney’s fees to Talley. However, considering our decision herein, and our reversal of a part of the award, we believe that fairness requires that we reduce the award to $6,500.
For the reasons assigned, the judgment of the trial court denying the demand of the Trust for reimbursement of medical benefits previously paid to the plaintiff in the sum of $42,080.50, is reversed, and judgment is rendered in favor of Enserch Corporation Employee Benefit Trust, and against Ronald C. Talley, in the amount of $42,080.50, with interest from judicial demand until paid. Further, the judgment in favor of Ronald C. Talley and against En-serch Corporation Employee Benefit Trust awarding attorney’s fees in the amount of $8,500, is amended to reduce that award to the sum of $6,500.
In all other respects, the judgment of the trial court is affirmed. Costs of this appeal will be borne by Enserch Corporation Employee Benefit Trust.
AFFIRMED IN PART; AMENDED IN PART; AND REVERSED IN PART.