WILLIAM A. CULPEPPER, Judge Pro Tem.
This is an action for benefits under a credit disability insurance policy issued to plaintiff when he purchased a new car. The defendant insurance company paid benefits for all except 14 days of the first twelve months of claimed disability, but determined the insured did not meet the definition of disability after the initial twelve month period. The plaintiff filed suit to recover benefits not paid. The lower court awarded plaintiff all the benefits he requested, as well as penalties and attorney’s fees. The defendant appealed. *958 Plaintiff answered the appeal, seeking an increase in both benefits and attorney’s fees.
FACTS
On June 12,1987, plaintiff, Jimmie Thomas, bought a new car for his daughter from Courtesy Motors, Inc. Simultaneously he purchased a policy of credit disability insurance from defendant, First Assurance Life of America, covering the financed portion of the price. The policy states that First Assurance will pay $247.49 per month during a disability, defined by the policy, up to the maximum amounts listed.
Thomas was kicked by a cow on August 30, 1988, while loading his cattle. He went to the emergency room and the doctor there told him he needed surgery on his left leg. He did not have the surgery at that time. On November 4, 1988, Thomas had surgery as the result of a bleeding ulcer caused by the medication he took for his cow-kick injury. He could not do any work for about three months. On March 3, 1989, a car ran a stop sign and hit his vehicle. This caused a back and neck injury. During April of 1989, he had surgery for an intestinal obstruction. Thomas has headaches from the car accident and is still under a doctor’s care for his back and stomach problems as of the date of trial on March 25, 1991.
On September 30, 1988, Thomas made the first claim on his credit insurance for the injury he received when kicked by the cow. Defendant paid all benefits claimed through November 4, 1989, except for the fourteen day period from October 16 to October 30, 1988. A total of at least thirteen monthly car notes were paid. Plaintiff contends he continued to be disabled, under the definitions of “disability” in the policy, after November 4, 1989. Defendant contends plaintiff is not disabled, under the definitions in the policy, after the first twelve months.
No master policy was filed in evidence. However, a two part definition of disability is included in the credit insurance application. The first definition is as follows:
“... During the first twelve months of disability, the disability must prevent the insured from performing the duties of the occupation, business or employment which the insured held at the commencement of the disability; ...”
The second part is:
“After the first twelve months of disability, the disability must prevent the insured from engaging in any occupation or employment for wages or profit for which the insured is reasonably qualified by education, training or experience.”
The trial court found that from October 16, 1988 to October 30, 1988 the insurance company did not pay credit disability benefits while Thomas was totally disabled. The judge awarded Thomas those days of benefits, totaling $115.50, plus the penalty of 10% provided by LSA-R.S. 22:657. He did not award attorney fees for nonpayment of these benefits. The court also assessed 10% penalties against First Assurance Life for the four months which were paid late in excess of 30 days during 1989. No attorney’s fees were awarded as to these late payments.
The court also found that Mr. Thomas met the second definition of total disability under the policy. The court awarded these benefits and assessed the statutory 10% penalty, judicial interest from the date each payment was due and an attorney’s fee of $5,000.00, finding First Assurance Life was arbitrary and capricious in their nonpayment of benefits during this second disability period after the first twelve months. First Assurance Life appealed, asserting the following assignments of error:
ASSIGNMENT OF ERRORS
I. IT WAS ERROR FOR THE TRIAL COURT TO FIND THAT PLAINTIFF-APPELLEE, JIMMIE THOMAS SUFFERED FROM A DISABILITY WHICH PREVENTED HIM FROM ENGAGING IN ANY OCCUPATION, EMPLOYMENT FOR WAGES OR PROFIT FOR WHICH HE WAS REASONABLY QUALIFIED BY HIS EDUCATION, TRAINING OR EXPERIENCE.
*959 II. IT WAS ERROR FOR THE TRIAL COURT TO AWARD STATUTORY PENALTIES AND ATTORNEY’S FEES TO THE PLAINTIFF/APPELLEE WHEN THE PLAINTIFF/APPELLEE HAD ADMITTED TO ENGAGING IN AT LEAST FOUR DIFFERENT OCCUPATIONS FOR PROFIT DURING THE PERIOD IN QUESTION.
III. IT WAS ERROR FOR THE TRIAL COURT TO REVIEW OVER OBJECTION, PRIVILEGED CORRESPONDENCE AND WORK PRODUCT, PREPARED IN ANTICIPATION OF LITIGATION BETWEEN DEFENDANT/APPELLANTS, CLAIMS ADJUSTER AND ATTORNEYS HIRED BY DEFEND ANT/APPELLANT.
IV. IT WAS ERROR FOR THE TRIAL COURT TO FIND THAT PLAINTIFF/APPELLEE, JIMMIE THOMAS WAS NOT ENGAGED IN HIS OR ANY OTHER OCCUPATION FOR REMUNERATION OR PROFIT.
The plaintiff answered the appeal seeking an increase in attorney’s fees for work done at the trial court level and an award of attorney’s fees for the prosecution of this appeal in the amount of an additional $5,000.00. He also requests that the court award the future benefits which he had requested in his petition and were not awarded at the trial court level.
ASSIGNMENT OF ERROR NO. 1
The lower court made a finding of fact that: “the disability that Jimmie Thomas now suffers from prevents him from engaging in any occupation, employment for wages or profit for which he is reasonably qualified by education, training or experience.” We recognize that in Gauthier v. Goux, 579 So.2d 1233 (La.App. 3 Cir.1991) writ denied 585 So.2d 572 (La.1991), we held that the reviewing court must give great weight to factual conclusions of the trier of fact, and the appellate court should not disturb these factual findings in the absence of “manifest error.”
Before Thomas’ accident with the cow, his back and neck injuries, and two abdominal surgeries, he owned a gas station. He performed mechanic duties, such as muffler and radiator repair work, and managerial duties at his gas station. Thomas is trained to repair mufflers. He testified he cannot now do the radiator and muffler work, but he spends a few hours each day at his station talking to customers and running the credit card machine. The investigator hired by First Assurance Life testified he had seen Thomas working underneath a car, measuring and cutting a tail pipe on December 14, 1989, which was during Thomas’ alleged period of disability. Thomas explained he was trying to show one of his workers how to make this repair, and later that evening he could not sleep because of the pain.
Mr. Thomas also owns 14 rent houses. He testified he can no longer do the maintenance work on them and has hired someone to perform the manual labor necessary to maintain the houses. However, he still derives income in the form of rent from the houses.
In addition, Thomas owns a farm. He testified he has had to hire help to do the strenuous farm work since his accident with the cow. However, he still owns the farm and derives income from it.
Thomas is also a Mamou City Councilman, with a gross salary of #350.00 per month, and sits on the Board of Savoy Memorial Hospital.
In accident insurance policies, jurisprudence has interpreted “complete inability of the insured, due to sickness or injury, to perform every duty pertaining to his occupation,” as being an inability to perform the substantial and material parts of his occupation in the usual and customary way. Laborde v. Employers Life Ins. Co., 412 So.2d 1301 (La.1982).
In Scalia v. The Travelers Insurance Company, 210 So.2d 373 (La.App. 2 Cir.1968), the owner of a service station was injured in a car accident. The Second Circuit found plaintiff was totally disabled because he was unable to perform strenuous physical labor, which was a substantial and material part of his occupation, in the usual and customary manner. The policy *960 provided: “The term ‘total disability’ as used herein means the complete inability of a Participant to perform any and every duty pertaining to any and every occupation or employment.”
In Rodriquez v. American Standard Life & Accident Insurance Co., 553 So.2d 479 (La.App. 3 Cir.1989) a worker injured his back while at work and filed a claim under his employer’s disability policy. The policy defined total disability as one preventing the insured “from performing every duty pertaining to his business or occupation.” The court held:
Despite the restrictive language, the jurisprudence has interpreted total disability liberally to permit recovery where the claimant cannot perform the substantial and material part of his occupation in the usual and customary way. Laborde v. Employers Life Ins. Co., 412 So.2d 1301 (La.1982); Johnson v. State Farm Mut. Auto. Ins. Co., 342 So.2d 664 (La.1977). That the insured may engage in some other occupation does not disqualify him insofar as concerns policies of this character. Foret v. Aetna Life & Cas. Co., 337 So.2d 676 (La.App. 3rd Cir.1976).
It is apparent that the definitions of total disability in the above cases, involving disability insurance, are less restrictive than the definition of disability, after the first twelve months, in the present credit insurance policy. For instance, in Rodriquez the policy defined disability as preventing performance of “every duty pertaining to his business or occupation.” This is very similar to the definition for the first twelve months in the present case, in that the insured is disabled if he cannot return to the same employment in which he was engaged at the time of the injury. However, the definition of disability, after the first twelve months, in the present case, is more restrictive in that the insured must also be disabled “from engaging in any occupation or employment for wages or profit for which the insured is reasonably qualified by education, training, or experience.”
Thomas is disabled from returning to the strenuous physical labor which he performed at his service station, on his farm, and in repairing his rent houses. So he is disabled under the definition for the first twelve months. However, he can and does manage his service station, his farm and his rent houses, from which occupations he earns profits. And he is reasonably qualified for such managerial duties by education and experience. Thus, he is not disabled, under the policy, after the first twelve months.
In LaCaze v. Gulf Life Ins. Co., 499 So.2d 1040 (La.App. 3 Cir.1986), writ recalled and dismissed, 501 So.2d 240 (La.1987), we held the insurer has the right to limit its coverage, and if a provision doing so is clear, a court cannot disregard the plain language of the contract. The language of this policy is clear.
The lower court narrowly interpreted the language of the second definition of disability to mean the policy holder must be able to engage in an employment or occupation for which he was “trained.” The trial judge determined that since Mr. Thomas was trained to repair mufflers and radiators, and he cannot now perform this type of work, he fits that definition of disability. However, the language is broader than this interpretation and states, “by education, training or experience.” Mr. Thomas has experience in managing a gas station, a farm and rent houses, and being a council member, and is presently engaged in all. Thus he does not meet the disability requirements of the policy after the first twelve months.
ASSIGNMENT OF ERROR NO. 2
The defendant asserts the lower court erred in awarding statutory penalties and attorney’s fees. The only attorney’s fees awarded were for late payments and failure to pay after the first twelve months. In view of our holding that no payments were due after the first twelve months, defendant was not arbitrary or capricious. Penalties on the fourteen days during the first twelve months, for which no payments were made, were awarded, and we affirm that.
ASSIGNMENT OF ERROR NO. 3
Plaintiff made a motion for In Camera Inspection of the contents of the claims *961 adjuster’s file. This file included a letter dated June 19, 1988, from defendant’s attorney, John Adcock, to the claims adjuster, Joe Rohal, detailing his opinion as to whether or not Thomas’ claim should be paid. The lower court allowed the introduction of this letter into evidence. Defendant’s counsel objected that the letter was an attorney’s work product and was a privileged communication between Mr. Rohal and his attorney. The lower court also allowed into evidence two letters dated July 13th and 14th, 1989, from an attorney, Bruce Danner, to defendant’s claims adjuster. These letters outlined case law and rendered legal opinions about Thomas’ claim.
La.Code of Civ.Proc. art. 1424 states:
Art. 1424. Scope of discovery; trial preparation; materials
The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert.
These three letters clearly reflected the attorneys’ opinions as to Thomas’ claims, and as such should not have been either discoverable or introduced into evidence.
The trial judge opined that art. 1424 applies only to writings by the attorney of record in the case being tried. Since the letters at issue were not written by defendant’s attorney of record, the trial judge allowed their introduction. We find no such restriction in art. 1424.
ASSIGNMENT OF ERROR NO. 4
After setting forth the definitions for disability during the first twelve months and thereafter, as quoted above, the application states: “In no event shall ‘Disability’ exist for any purpose of this policy when the insured is engaged in their or any other business or occupation for remuneration or profit.”
This appears to be a “catch-all” for any income or profit from any business or occupation. It is in conflict with the definitions for the first twelve months and thereafter. As such, it presents at least an ambiguity which raises serious problems. However, it is our understanding from defendant’s brief that its Assignment of Error IV is addressed only to disability after the first twelve months. Defendant does not seek a refund for payments made for the first twelve months. Since we have already held plaintiff is entitled only to benefits for the first twelve months, and defendant does not dispute this, we need not consider Assignment IV.
PLAINTIFF’S ANSWER TO THE APPEAL
Plaintiff’s request for additional attorney’s fees for preparation and trial of the case in the lower court is denied as is his request for attorney’s fees for this appeal. Furthermore, his request for future benefits is denied since he is not entitled to benefits after the first twelve months.
DECREE
For the reasons assigned, the judgment appealed is amended to reduce the award to plaintiff to the sum of $115.50 plus a penalty of 10% thereon under LSA-R.S. 22:657. The award of other penalties and attorney’s fees is reversed and set aside. The award for expert witness fees is affirmed. The costs in the trial and appellate courts are assessed against the defendant-appellant and plaintiff-appellee in the proportion of one-half to each.
AMENDED AND AFFIRMED IN PART, REVERSED IN PART.